### Ebenezer Anderson and Others v. John C. Baughman and Others.

Where one part of the description in a deed is false and impossible, but, by rejecting that, a perfect description remains, such false and impossible part should be rejected, and the deed held good.

Where a mortgage described the land conveyed as "lot four of block one of the La Fontaine farm, lying south of the river road, and fronting on Detroit river being now used and occupied, with the steam saw mill thereon, by the parties of the first part," and it appeared that that portion of the La Fontaine farm had been platted into four lots or blocks, which had not been subdivided, that the mill was situated on the one numbered four on the plat, and the others were fenced in, used and occupied with the mill:—*Held*, That the words "of block one" of this description should be rejected, and the mortgage held a valid lien upon lot four, according to the evident intent of the parties.

A deed or other written instrument is to be construed so as to render it valid and effectual, rather than void.

The error in the mortgage appearing by construction, its record is notice to subsequent purchasers that the mortgage is upon lot four, and they take subject to it.

*Heard July 6th. Decided July 13th.*

Appeal in Chancery from Wayne Circuit.

The bill alleges that, on November 5th, 1855, John C. Baughman, and John E. King, as principals, and Bela Hubbard, as surety, gave to James L. Lyell a bond in the penal

sum of $20,000, conditioned for the payment of $10,000 in one year from the date thereof; that, in order to secure the payment of said bond, Baughman and King gave to Lyell a mortgage on premises described as all that piece or parcel of land situate in Springwells, Wayne County, Michigan, known as lot four (but which is described, by mistake or inadvertence, in said mortgage, as being lot four in block one) of the La Fontaine Farm, so called, lying south of the River Road and fronting on Detroit River, being then used and occupied, with the steam saw mill thereon, by the parties of the first part to said mortgage; that said mortgage was duly acknowledged, and properly recorded, November 7th, 1855; and that, on September 28th, 1857, Lyell assigned the same to complainants: that, at the time of the execution of said mortgage, it was agreed between the parties thereto that it should be given upon, and embrace said lot four; that said lot or block four was then, and is still, occupied by said steam saw-mill, and the parties at the time believed the mortgage to cover and embrace the said lot or block four; that there is no such lot as lot four of block one of said La Fontaine Farm, south of said River Road, and fronting said Detroit River; that that part of said farm was platted and divided into four lots or blocks, numbered one, two, three, and four, of which number four was the one intended to be covered by the mortgage; and that these lots or blocks were never subdivided.

The bill further states, that Bela Hubbard, to whom the premises were subsequently conveyed, gave to Thomas Walker, as President of the Bank of Utica, a mortgage, May 13th, 1856, on said lot or block four, together with lots or blocks one and three; but alleges that said Walker and said bank, their officers and agents, had notice before and at the time of the giving of the last mentioned mortgage, of the existence of the Lyell mortgage.

And the bill prays for a correction of the said mistake, and the sale of the premises to satisfy the amount of complainants' mortgage.

Hubbard answered, admitting the agreement to give a mortgage on said lot or block four, as alleged in the bill.

Walker and the Bank of Utica also answered, denying all knowledge of what was the agreement with respect to the giving of the mortgage, and denying expressly any notice of the existence of the Lyell mortgage at the time the mortgage was given to Walker, as President of the bank.

Replications were filed to these answers, and the cause heard on pleadings and proofs. No testimony was introduced to show any agreement as to what land should be described in the mortgage; but some was taken which was claimed to be sufficient to charge Walker with notice of the Lyell mortgage at the time the one to him, as President of the bank, was executed. The testimony, with respect to the subdivisions of the La Fontaine Farm, is sufficiently stated in the opinion.

The circuit court ordered decree for complainants, in accordance with the prayer of the bill, and Walker and the Bank of Utica appealed.

*A. D. Frazer*, *R. McClelland*, and *S. T. Douglass* for complainants:

Baughman & King's mortgage to Lyell was a valid conveyance *inter partes* of the premises claimed.

Reading the whole mortgage (2 *Pars. on Cont.* 13) in the light of the *facts* established by the extrinsic evidence admissible for the purpose of explaining it (*Ibid.* 61, 69, 73, 74), it clearly appears that these premises, and no others (*Ibid.* 15), were intended to be conveyed; and that, by a very natural mistake, they are erroneously described as being "in block No. 1," when there is no such subdivided block on the La Fontaine farm. And the general rule is, that, "in construing deeds, effect will be given to every part of the description, if practicable; but if the thing intended to be granted appears clearly and satisfac-

torily from any part of the description, and other circumstances of the description are mentioned which are not applicable to that thing, the grant will not be defeated, but those circumstances will be rejected as mistaken." — Per *Sutherland J.* in *Jackson v. Moore,* 6 *Cow.* 717, approved by *Bell J.* in *Emerson v. White,* 9 *Fos.* 499; 2 *Pars. on Cont.* 26, 62, *and note v.*; 4 *Greenl. Cr. Dig.* 246, 247, *and note*; *Broome's Leg. Max.* 403, 409.

From the numerous cases which affirm and illustrate this principle, we select the following, as most analogous to the present: 4 *Mass.* 196, 205; 7 *Johns.* 217; 18 *Johns.* 81; 19 *Johns,* 449; 6 *Cow.* 282; 21 *Barb.* 406, 409; 10 *Cush.* 242, 246; 10 *Ohio,* 313, 315, 316; 2 *Cush.* 393; 6 *Hill,* 453, 456, 457; 6 *Ind.* 63; 12 *Wheat.* 570; 4 *Wis.* 106; 16 *Johns.* 178.

The mortgage being a valid conveyance of the premises *inter partes,* the registry of it was notice to all the world. If the mistake in our mortgage had been one which rendered it wholly inoperative to convey the premises until *reformed* by a decree in chancery, the case might have been different; although even then we might have claimed that sufficient appeared upon its face to put appellants upon inquiry, and that they were therefore chargeable with notice of our equities. But no decree *reforming* our mortgage was necessary, because the intention of the parties is ascertainable by mere *construction* of the instrument.

*Walker & Russell* and *C. I. Walker* for defendants:

The Lyell mortgage is so vague and uncertain in the description, that it is impossible to arrive at the true intention of the parties, or to define the lands thereby attempted to be conveyed — and no property passed.—*Greenl. Cruise, Title* 32, *Deed, Chap.* 20, § 24 *and Note*; *Boardman v. Reed,* 6 *Peters,* 345; *Worthington v. Hylyer,* 4 *Mass.* 204.

ANDERSON v. BAUGHMAN.

We admit that if one description point out with sufficient certainty the premises to be conveyed, an additional false or mistaken description does not vitiate. *Proctor v. Pool*, 4 *Dev.* 370; *Mayo v. Blount*, 1 *Ired.* 283; *Jackson v. Sprague*, 1 *Paine C. C.*, 496; *Seaman v. Hogeboom*, 21 *Barb.*, 404.

But let the court here place itself "in the situation of the party at the time of its execution, with the knowledge of the surrounding circumstances," and ascertain, if it can, from the language of the mortgage thus illustrated, the intention of the grantors.

It is in proof that there is no such lot as lot number four in block number one, of the La Fontaine Farm — that there is a false description, and it is to be stricken out. The description left may then as well refer to the whole enclosure as to the single block on which the mill is situated. "The steam mill" is not used as a phrase of limitation, but of description rather. If there is any phrase of limitation, it is the occupation, and this extended to the four lots.

We say that there is nothing to show that the mortgage was to cover block four, and *only* block four; and a description that is as well applicable to two pieces of land as to one, is too uncertain to pass any thing.

CHRISTIANCY J.:

The first, and, as we think, the only question in this case, is, whether the description of the premises in the mortgage from Baughman & King to Lyell, when considered in connection with the plats and extrinsic evidence of facts upon the ground, and referred to in the mortgage, is sufficient to identify lot No. four, on that part of the La Fontaine Farm between the River Road and the Detroit River, as shown by the plat, and claimed by the bill?

The description in the mortgage is as follows: "All

7 MICH. — F.

that certain piece or parcel of land situate in Springwells, Wayne County, Michigan, known as lot No. four (4), in block No. one (1) of the La Fontaine Farm, so called, lying south of the River Road, so called, and fronting on Detroit River, being now used and occupied, with the steam sawmill thereon, by the parties of the first part."

By reference to the plat, it appears that all that part of the La Fontaine Farm "lying south of the River Road, and fronting on Detroit River," is divided into four tracts or lots, by straight lines drawn from the road to the river, parallel with the side lines of the farm; that these tracts are not designated by any word of description, as sub-division, block, or lot, but simply by numbers 1, 2, 3, and 4, in large figures; number one being on the upper or easterly line, and the numbers following consecutively to the lower or westerly line, and number four adjoining the lower line of the farm. None of these four tracts appears to have been divided into smaller portions or lots. That part of the farm immediately across the road, and between that and Fort street, is also divided into four tracts or blocks, numbered, beginning on the west line, consecutively 5, 6, 7, and 8, in the same large figures; and these last four tracts are each subdivided into ten smaller lots.

This plat, in its present form, was acknowledged June 5th, 1855; but it appears, from the testimony of Munro, who made the survey and plats, that a former plat of the southerly portion of this farm had been made by the witness some time about the year 1843, and that that portion of the farm between the River Road and the river (including the four tracts first mentioned) was not altered from the old plat, but remained unchanged; that none of the last named tracts had ever been subdivided into smaller lots; that the portion between Fort street and the River Road (including the tracts or blocks 5, 6, 7, and 8) was, by the new plat, subdivided into smaller lots, but

that this subdivision into smaller lots was not shown by the old plat.

It is admitted that tract or lot four, between the River Road and the river, as shown upon the plat, is situate on the La Fontaine Farm referred to, in the township of Springwells, Wayne County; and that it lies south of the River Road, and fronting on Detroit River. It is also proved that the steam saw-mill of the mortgagors, at the date of the mortgage, and for years before and since, was, and is, situate on this tract or lot four; and that there was no mill on any of the other tracts or lots between the River Road and the river (though all of them were occupied as a lumber-yard in connection with the mill). In all these particulars this tract or lot four agrees exactly with the calls of the mortgage. It is then evident that, if these tracts, numbered 1, 2, 3, and 4, between the road and the river, are properly called "*lots,*" instead of blocks, we have, in the mortgage, a full and perfect description, by the number of the lot, and the courses and distances indicated on the plat, with the further fact in identification, not susceptible of mistake, the mill called for in the mortgage as being on this lot. The description is then perfect and certain; and it agrees with all the calls of the mortgage, with the single exception that it is not "in block No. one." But, as the description is full, true, and perfect, in all respects, without the words "in block No. one," and false and impossible with them, these words must be rejected under the familiar rule, *falsa demonstratio non nocet;* of which a more appropriate illustration can not be found in the books.

But the defendants' counsel contends that these tracts or lots No. 1, 2, 3, and 4, are to be recognized as "*blocks,*" within the meaning of that term in the mortgage; and, in support of this view, he refers to the fact that tracts numbers 5, 6, 7, and 8, immediately north of the River Road, are subdivided into lots, and admitted to be properly termed

blocks; and, if numbers 1, 2, 3, and 4 be called blocks, the description in the mortgage becomes untrue, or at least so doubtful as to be void for uncertainty.

We give no opinion what would be the result on this hypothesis, as we think it very clear the mortgage does not refer to them as "*blocks*," and that it can not be so construed without doing violence to the language, and disregarding the whole subject matter, and the intention of the parties.

1st. These tracts (between the road and the river) are not, on the plat, designated as "blocks," nor by any name whatever; and are not, therefore, required to be called blocks, unless there be something in the nature of the facts making such a designation the proper one. The term "*block*", when used in reference to the divisions of land on a city or village plat, in 'its ordinary acceptation, implies a large division of land containing several smaller subdivisions, usually called lots; while the term *lot* may be equally appropriate for the designation of one of these sub-divisions of a block, or for a larger tract, with definite boundaries, and not subdivided into smaller lots. It is clear that the tracts 1, 2, 3, and 4, of the farm, had never been subdivided into smaller portions, and therefore are properly designated as lots; and that they can, with no propriety of language, be called blocks. Tracts 5, 6, 7, and 8 are very properly designated "*blocks*", since they have been subdivided into lots by the new plat; but, by the old plat before being so subdivided, they were properly described as lots merely.

2d. It can not be denied the mortgagors intended to mortgage the lot ·on which the mill stood, and, though they might be mistaken as to the proper designation of the tracts or sub-divisions of land represented by the plat, they can not be supposed to have erred as to the actual location of the ground on which the mill, occupied and owned by them, was situated.

3d. If called lots, the description in the mortgage is false in but one particular, and is perfect when that one is rejected; if called "*blocks,*" it is false in two particulars, as there is no lot four in block one, and no mill on the lot; and the description is rendered less definite as a whole, if not entirely uncertain.

It is a rule as well founded in reason as it is supported by authority, that deeds and other written instruments should be so construed as to render them valid and effectual, rather than void; *ut res magis valeat quam pereat.* But to construe this mortgage so as to make the tracts in question *blocks,* instead of *lots,* would be to violate the plain meaning of words, and the clear intent of the parties, and to ignore the whole subject matter, in order to lay a foundation for violating this cardinal rule of construction.

We can not entertain a doubt that the parties intended, by the mortgage, to describe lot four, between the road and the river, as shown by the plat, and claimed by the bill.

To raise any doubt upon this, two important facts must be shown, which not only do not appear, but are entirely disproved: first, that lot number one was subdivided into lots, among which should be found a lot number four; and second, that the mill of the mortgagors should be found upon this lot.

It is quite evident the person who drafted the mortgage mistook that part of the farm between the road and the river for one block of lots, and supposed lot four to be a lot of that block. The error, however, is so palpable, that it can not fail to be discovered by construing the mortgage, as such instruments must always be construed, with reference to the plat, and facts, and monuments on the ground, referred to in the instrument itself.

The mortgage was good between the parties, without

correction, and the error appearing by construction, the. record was notice to all subsequent purchasers and encumbrancers, as much as if the error had not occurred. No. man of ordinary intelligence could have been deceived as. to the land intended. This disposes of the whole case.

The decree of the court below must be affirmed, with costs.

MANNING and CAMPBELL JJ. concurred. MARTIN Ch. J. did not sit in this case.