## Sylvester Slater v. Jacob W. Breese and others.

*Mortgages: Description of premises: Identification: Evidence.* Omitting to name the state, county, and township, in the description of premises in a mortgage, will not invalidate the instrument, where other adequate elements of identification exist; and it is not essential that the property should be so described as to identify it without the aid of extrinsic proofs, but it is always competent to connect the written description with the material subject matter by proof of the surrounding circumstances.

*Description of premises: Identification: Incorrect description.* Where there are descriptive signs satisfactorily ascertained which designate the thing meant to be granted, the addition of circumstances or accompaniments which are untrue will not defeat the grant, but they will be rejected.

*Mortgages: Incorrect description: Foreclosure bill: Correct description.* Where a mortgage is inaccurate in its description of premises, and has some elements that have to be rejected as surplusage, but the description is nevertheless sufficient, in the light of the extrinsic facts, to identify the property intended, it is proper in a bill to foreclose the

SLATER v. BREESE.

mortgage to describe the property actually mortgaged by a description which is accurate; and the variance in terms from the description in the mortgage is unimportant.

*Amendments at the hearing : Foreclosure bill: Subsequent mortgages.* The right to grant amendments at the hearing in the court of first resort is much broader than in an appellate court, and is more a question of terms than of power, where the amendment is germane to the controversy and calculated to help to a better or more complete result; and where the complainant in a foreclosure bill held subsequent mortgages not referred to in his bill, and the answer of a defendant brought in as a subsequent incumbrancer referred to such intervening mortgages, and based asserted equities upon their existence, it is competent to permit complainant to so amend his bill at the hearing as to make it aver the facts as to these mortgages.

*Equity pleading and practice: Application to take further proofs: Amendments.* Upon an application for further time to take additional testimony upon the subject matter of amendments to the bill and answer made with leave at the hearing, the showing should point out what facts were expected to be proved, so that the court could determine upon their relevancy and importance. And where a party has failed in his showing for time to take proofs out of court, permission to him to take further proof in open court at the hearing, being a provision to that extent in his favor, will authorize no complaint on his part.

*Mortgages ; Second and third mortgagees: Intermediate grant: Subject to first mortgage.* The statement in a deed from an intermediate holder of a portion of the premises covered by a mortgage, that the grant is subject to such mortgage, in the absence of any requirement that the grantee assume and pay the same, will not make the mortgage a specific charge upon the portion or interest granted by such deed, so as to influence the equities as between second and third mortgagees upon other portions of the mortgaged premises.

*Mortgages : Foreclosures: Order of sale: Second and third mortgages.* It is a maxim of equity, that where one has a lien on two funds, and another a later lien on one of them, the former is bound to exhaust the singly charged fund before resorting to that which is doubly charged; but this maxim will not aid a third mortgagee of a portion of the premises covered by the first mortgage to drive the first mortgagee to sell first a parcel on which he also holds a second incumbrance and which is not included in the third.

*Mortgages : Foreclosure : Decree: Order of sale: Subsequent mortgages.* Where a portion of the mortgaged premises is covered by a second mortgage held by the complainant, and another portion by a third mortgage held by a defendant, the latter cannot complain that on a bill to foreclose the first mortgage the decree provides for the sale first of the parcel covered by the second mortgage, but requires the sale of that parcel to be subject to the payment of the second mortgage.

*Order of sale : Third mortgagee : Second mortgage : Amount.* A third incumbrancer who concedes the existence of a second incumbrance is not entitled as matter of right, upon the question of the order of sale upon foreclosure of the first mortgage, as between the parcel covered by his incumbrance and that covered by the second incumbrance, to introduce proofs to show that the amount of the second incumbrance is less than it is represented to be.

*Foreclosures : Report of amount due : Decree : Excess : Appeal : Exceptions.* Where the amount due upon a mortgage foreclosure has been found and reported by a commissioner to whom the case was referred for that pur-

pose, and the court in decreeing the amount has acted on such report, a defendant who has taken no exception and made no objection to the report, cannot on appeal assail the decree as being excessive in the matter of the allowance of interest.

*Heard January 9. Decided April 4.*

Appeal in Chancery from Lenawee Circuit.

*Weaver & Welsh* and *A. L. Millard,* for complainant.

*Stacy & Underwood* and *Walker & Weaver,* for defendant Breese.

GRAVES, J:

The printed record in this case is replete with inconsistencies and inaccuracies, and especially in regard to dates, and much embarrassment has been consequently experienced in threading the details. The material facts are, however, believed to be sufficiently ascertained and understood to authorize conclusions upon the merits.

The bill was filed April 26, 1875, to foreclose a mortgage made July 29, 1867, by the defendants Theodore and Joseph Rogers to one Sarah L. Ashley, and by her assigned to complainant June 11, 1868. It would seem that Mrs. Ashley conveyed the premises to the mortgagors by deed dated July 24, 1867. The mortgage embraced a little less than fifty acres, and comprised three irregular shaped, but contiguous parcels, and one of these parcels included premises called the grist-mill lot or property, of a little more than three acres with a mill and its appurtenances, a saw-mill lot lying very near, of a little over an acre and a half, and also a piece of a few rods in extent, called the piece between. Before hearing, the cause was discontinued as against the defendant Wright. As to the rest of the defendants, except Dye and Breese, the bill was taken as confessed. Dye answered, and it appeared he had no interest except as to a parcel of about five and a half acres on one end of one of the three great parcels in the mortgage. He had bought this, with other lands, of defendant McOmber, and his posi-

tion was, that Mrs. Ashley released it from the mortgage before she assigned to complainant. The court sustained this defense and finally dismissed the bill as to Dye. Breese answered, and claimed, among other things, that March 7, 1870, the defendant Emma Sweet mortgaged to the defendant Joseph Rogers all the premises in the Ashley mortgage except the two mill lots and appurtenances, the piece between, and the Dye parcel of five and a half acres; that this mortgage was assigned to him by Rogers; that he foreclosed under the statute in 1872 and became the purchaser and went into possession, and has since held possession and used and improved the property.

July 24, 1876, foreclosure was granted and Breese appealed. The controversy is confined to complainant and Breese, and Breese's right to contend is based finally upon his interest under the subsequent mortgage. He is a subsequent incumbrancer of a portion of the premises claimed to be embraced by the mortgage sought to be foreclosed. There is no equity between co-defendants to be settled. The questions made relate to the description in the bill and mortgage, the relative equities of complainant and Breese in the matter of working out a satisfaction of complainant's mortgage through sale of the property in that mortgage, and the propriety of certain proceedings in the cause. It is perhaps best to dispose of the points concerning the description at the outset. It is objected, in the first place, that there is a fatal variance between the description in the bill and in the mortgage, and in the second place, that there is an entire lack of description of the land in the mortgage. This last objection may be first considered.

The grounds of the objection are, that no town, county or state is mentioned, or any circumstance or thing referred to, to fix the location, and that in regard to the first and second descriptions, no commencement is given.

It is not essential to the validity of a grant that the property should be so described as to avoid the necessity of an appeal to extrinsic proofs to apply the grant to the

SLATER v. BREESE.

property. The subject matter must undoubtedly be so earmarked in the grant as to be capable of being distinguished from other things of the same kind. But it is always competent to fix and identify by extrinsic proof the natural monuments and other badges of identity and connect the description in the deed with the material subject matter dealt with by it.—*Blake v. Doherty, 5 Wheat., 359;* see also *Wilson v. Boyce, 2 Otto, 320.*

The property to be granted may have a particular name by reputation, and if so it may be described by such name, without giving monuments, boundaries or the like.—*Goodenow v. Curtis, 18 Mich., 298; Sargent v. Adams, 3 Gray, 72; Woods v. Sawin, 4 Gray, 322; Gerrish v. Towne, 3 Gray, 82;* and outside evidence may be resorted to, to apply the name to that which it signifies. Indeed, the instances are rare in which no help whatever is required. If the means are given in the grant, either by a name of notoriety or by specified monuments and other definite particulars, to identify the thing meant to be granted, with the aid of outside examination and proof to fix and determine the monuments and other particulars or connect the name with the thing, the description is *prima facie* sufficient.

And omitting to name the state, county and township will not prejudice, where other adequate elements of identification exist.—*Russell v. Sweezey, 22 Mich., 235; Atwater v. Schenck, 9 Wis., 160; Mecklem v. Blake, 19 Wis., 397; Pursley v. Hayes, 22 Iowa, 11; Ives v. Kimball, 1 Mich., 313.*

It is also well settled that if there are descriptive signs satisfactorily ascertained which designate the thing meant to be granted, the addition of circumstances or accompaniments which are untrue will not defeat the grant. They may be rejected.—*Worthington v. Hylyer, 4 Mass., 196.* This principle is confirmed and its application illustrated in numerous cases. Among others, see the following: *Ives v. Kimball, 1 Mich., 308: Anderson v. Baughman, 7 Mich., 69; Loomis v. Jackson, 19 J. R., 449; Jackson v. Marsh,*

36 MICH.—11.

*6 Cow., 281; Jackson v. Clark, 7 J. R., 217; Doe v. Roe, 1 Wend., 541; Hathaway v. Power, 6 Hill, 453; Gouverneur v. Titus, 1 Edw. Chy. R., 477; Peck v. Mallams, 6 Seld., 509, per Johnson, J.; Hannum v. Kingsley, 107 Mass., 355; Lyman v. Loomis, 5 N. H., 408; Barnard v. Martin, Id., 536; Johnson v. Simpson, 36 N. H., 91; Smith v. Strong, 14 Pick., 128; Doane v. Willcutt, 16 Gray, 368; Thatcher v. Howland, 2 Met., 41; Hull v. Fuller, 7 Vt., 100; Law v. Hempstead, 10 Conn., 23; McChesney v. Wainwright, 5 Ohio, 453; Eggleston v. Bradford, 10 Ohio, 312; Stringer v. Young's Lessee, 3 Pet., 320; Barclay v. Howell's Lessee, 6 Pet., 498; Lodge's Lessee v. Lee, 6 Cranch, 237; Parker v. Kane, 22 How., 1.*

Now it is quite plain that the descriptive part of complainant's mortgage has some inaccuracies, but it is equally plain that the terms of the description when taken together are abundantly sufficient, with such aids as are admissible, to identify the land.

There are several monuments and particulars given, and they are arranged in definite space relations to distinguish the exact location and define the premises, and no other place in the world could be found marked out by such a combination of features. We have two highways, the river Tiffin, a bridge, a ravine, the south line of Power's land, certain lines of sections, and these are spaced off, one from another, by course and distance.

Then the description represents the land as being on sections one and twelve in township eight south of range one east.

When we come to traverse these sections to find the land, we discover the river, the two highways, the ravine, the bridge, and Power's south line, all arranged in the relative positions indicated.

We turn to the mortgage and find the first and second descriptions have the same starting point, and that both parcels are capable of being run out as one. At the same time we notice that such starting point is the quarter stake.

on the southwest corner of the southeast quarter of a section, but that the conveyancer either omitted the number of the section, or by mistake called it number "eight." An examination of the phraseology and of the government lines and the land marks given in the mortgage and found on the ground at once explain the matter and show that the number of the section was left out and that the word "eight" was intended as the number of the township. Bearing in mind that the first and second parcels have the same starting point, to-wit: the quarter stake on the southwest corner of the southeast quarter of a section, we observe that according to the description of the second parcel, there is a call for a highway at the end of the first course, and also for one at the end of the second course, and for the centre of the Tiffin river at the end of the fourth, whilst the fifth is required to run near the centre of that river. and the sixth to terminate at Power's south line.    These marks are found, and it becomes clear that the starting point for the two parcels was meant to be at the quarter post on the southwest corner of the southeast quarter of section one.

The ascertained particulars imperatively require section one as the section containing the quarter at the corner of which the quarter post mentioned is situated.

It is still objected that where the mortgage gives the sections, township and range, it places the first parcel on the west half of the northeast quarter of twelve, whereas the other terms place it on the east half of the northwest quarter, and that it also places the second parcel on the west half of the southeast quarter of section one, instead of the east half of the southwest quarter, where it is claimed to be.

The landmarks given in the mortgage, and the facts found on the ground, conclusively identify the property without resort to these superadded circumstances, and it is demonstrated that the conveyancer, in attempting to give the exact eighty. acre lot, blundered.    And it is only necessary to reject the

expression "the west half of northeast quarter of" in regard to the first parcel, and the expression, "on the west half of southeast quarter of," in connection with the description of the second parcel, to render the description consistent and sufficient.    That it is proper to reject these unnecessary and discordant circumstances, is sanctioned by overwhelming authority.    See cases cited.

There are still other considerations which ought not to be overlooked in view of the position held by the defendant Breese.    In the first place this mortgage and several grants of parts of the property, and which grants the defense has all along assumed to be of parts of the property, were all recorded as grants of lands situated in Lenawee county, and some of them identified the location with entire correctness. Moreover, the whole drift of the answer points to the very same property; and defendant's mortgage, the mortgage under which he raises this defense, not only follows the same courses and gives the same monuments and particulars, but actually brings to notice the existence of the grist mill and saw mill within the general lines, by an exception, and the answer at last asserts that defendant has been in actual possession of the unexcepted portion for many years under his mortgage, whilst the witness facts of the two descriptions so tally as to forbid argument that the two mortgages do not identify the same land.

The objection of defendant against the description in complainant's mortgage is hence totally untenable.

The bill describes the same land, but with accuracy, and the objection of variance is of course without merit.

The answer suggested the existence of some equities by defendant against complainant, in consequence of certain grants and releases given before defendant's mortgage and before the inception of the title on which it is based.    But this claim is very properly not insisted on.

Before proceeding further it is necessary to explain somewhat, and more or less repetition can hardly be avoided.

We have already seen that the mortgage sought to be

foreclosed was made in 1867, and was assigned to complainant in June, 1868; that the premises were described as three principal parcels, upon one of which was a grist-mill property, a saw-mill lot and a small piece between, and that another embraced a piece of about five acres and a half released to McOmber by Mrs. Ashley before she assigned the mortgage to complainant.

We may now notice the later incumbrances acquired by complainant and defendant.

January 25, 1868, Joseph Rogers granted an undivided half of the grist-mill property to Parker, and this interest through mesne conveyances was vested in Sarah Smith, January 17, 1870, at which time she, with Myron Smith, mortgaged it to complainant, the mortgage purporting to be for twelve hundred and fifty dollars, on interest at ten per cent.

October 11, 1869, Theodore Rogers granted the other undivided half of the grist-mill property to Joseph Rogers, and he, in November of that year, granted it to Joseph and Sarah Bemenderfer, and they at that time mortgaged it back to Joseph Rogers, this mortgage purporting to be for fifteen hundred dollars, with interest at ten per cent. January 18, 1870, Joseph Rogers assigned it to complainant. March 7, 1870, Joseph Rogers quit-claimed to Emma Sweet, and she thereupon gave her mortgage to him on all the property described in the mortgage in suit, except the grist-mill property, the saw-mill property, the piece between, and the five acres and a half which had been released to McOmber. June 18, 1872, Joseph Rogers assigned this mortgage to defendant Breese.

From what has been said it appears that complainant owned the mortgage in suit, covering all the three great parcels except the piece his assignor had released to McOmber, and that in January, 1870, by means of the two mortgages given by the Smiths and Bemenderfers, he acquired a second incumbrance on that part or portion of the premises in his first incumbrance designated as the grist-mill property, and that afterwards and in June, 1872, the de-

fendant acquired the later mortgage made by Mrs. Sweet in March, 1870, on all the premises in complainant's first mortgage except this property covered by complainant's second incumbrance, and except also the saw-mill property, the piece between, and the released five and a half acres.

In this state of things, Breese proceeded in 1872 to foreclose this Sweet mortgage by advertisement, and he became purchaser on the sale, and in due time, as would seem, received his deed and went into possession and thereafter kept it.

When complainant came to file his bill in April, 1875, he took no notice of his second incumbrance under the Smith and Bemenderfer mortgages on the grist-mill property, but proceeded as though the only incumbrance he held on any part of the three great parcels was the mortgage assigned to him by Mrs. Ashley. The bill was in the usual form to foreclose that mortgage and for no other relief.

In answering, Breese set up his mortgage made by Mrs. Sweet, his foreclosure and possession, and stated that there were "sundry other mortgages upon some parts of the lands in said bill described, to a considerable amount;" that the other parcels of land covered by complainant's mortgage had been sold and conveyed before the premises he held under the Sweet mortgage; that in case of sale on complainant's mortgage the parcels ought to be sold in the inverse order of their alienation; and at last asked that the securities might be marshaled according to the respective rights of the parties, and that sales might be made in such manner as to accord with the rules established in such cases, and that his premises might be last sold.

A general replication was filed, and the cause was carried on upon these pleadings to the time for hearing, in July, 1876.

In the meantime, however, complainant proceeded to foreclose his mortgages on the grist-mill property, by advertisement. He commenced a few days after the bill was filed, and the premises were struck off to him August 2,

1875, and deeds were made and filed, as seems to be conceded, in pursuance of the statute. The undivided half covered by the Bemenderfer mortgage was bid off at nineteen hundred and eighteen dollars and eighty-three cents, and the other at nineteen hundred and sixty-nine dollars and fifty-eight cents.

In the progress of the cause Breese seems to have adduced documentary evidence of his incumbrance under the Sweet mortgage and his foreclosure, and complainant seems to have been allowed, but against Breese's objection, to give similar proof of his junior incumbrance on the grist-mill property under the Smith and Bemenderfer mortgages, and of his proceedings to foreclose those mortgages during the pendency of the suit. At length, when the cause stood for hearing, or at least when defendant so understood, and on the 17th of July, 1876, the court, in view of the circumstances and of defendant's claim that the incumbrances on the property should be marshaled agreeable to equity and that the parcels might be exposed for sale in the inverse order of their alienation, or in such manner as to require a sale of the grist-mill property before resorting to that covered by defendant's incumbrance, granted complainant leave, against Breese's objection, to set forth by amendment of the bill the fact of his being second incumbrancer of the grist-mill property under the Smith and Bemenderfer mortgages, and further, that he claimed that the property should be sold in such manner as not to impair his rights as such incumbrancer of that portion of the property in his first mortgage.

The order allowing this amendment of the bill also gave Breese leave to answer the new matter within five days, and directed that the cause should stand over for further hearing until July 24th, and that he might take further proof within that time, or take the same in open court on such further hearing. The bill having been amended pursuant to the order, Breese acted upon the leave to answer further, and on the 22d of July filed his amendments. He

set up on information and belief that the Smith and Bemenderfer mortgages were made "for a much larger sum than is or was ever due or payable thereon; and that as nearly as he could learn about eight hundred dollars thereof was for usury, and was to cover a bonus to said complainant; that large sums of money had been paid by the mortgagor and others to complainant thereon, which had not been allowed or credited, and that much had been paid for delay." He further set up the purchase of complainant on the statutory foreclosures; that the amount claimed to be due and bid by complainant was one thousand dollars too much; that it was insisted that he, defendant, could not redeem, and that the sale would become absolute August 2, 1876, and after which no right would exist to require the grist-mill property to be sold on the mortgage in suit; that the undivided half deeded to Mrs. Smith, and on which she gave the mortgage to complainant, was charged in the deed she received with the mortgage in suit, and that the other undivided half came to the Bemenderfers charged in like manner, and of which facts complainant had notice, and hence, that those mortgages ought not to be held a prior lien to that of defendant, except to the amount actually unpaid upon them, exclusive of costs. The amendments further claimed that before complainant could be entitled to avail himself of the Smith and Bemenderfer mortgages in this case, he must first relinquish all claim to any rights growing out of his statutory foreclosures, and bring the mortgages into court and submit all the equities in relation thereto, and in relation to his first mortgage, and in relation to the rights of defendant, to the court.

When the cause came up for further hearing on the 24th of July, pursuant to the order, Breese moved on his affidavit, that the hearing might be postponed for sixty days to enable him to procure additional proof. He stated in his affidavit that under the amendments to the bill, Joseph Rogers was a material and important witness for him, and that he could not safely proceed to the hearing without his testimony,

as he was advised by his counsel, after stating to them what he expected and believed he would be able to prove by said Rogers, and that he believed such advice to be true; that as he was informed, said Rogers resided in California, and that his personal attendance or testimony could not be procured in less than from forty to sixty days. The court refused to grant the postponement. Breese was then placed upon the stand by his counsel, who offered to prove by him that the amount claimed to be due on the Smith and Bemenderfer mortgages, and that for which the premises were bid in, was much larger than the real consideration; that the amount called for by the mortgages, when given, was much more than the amount of money which the mortgagors received; that four hundred dollars had been paid on each, which had never been endorsed, and the offer concluded with a proposal to prove the facts in the amendments to the answer. Under objection of complainant's counsel, the offer was refused.

These various proceedings are made grounds of complaint. In disposing of the points it will not be needful to advert to all the answers which are open.

It is objected that the amendments of the bill were not such in their nature as it was competent for the court to permit at the hearing.

We think differently. Counsel appear to have been misled by referring to rulings touching amendments at the hearing in the appellate court. The right to grant amendments at the hearing in the court where the cause is first heard, is for obvious reasons much broader than in the appellate court.

In the court of first resort it is generally more a question of terms than of power, if the amendment is germane to the controversy, and it is supposed it will help to a better or more complete result.—*1 Danl. Chy. P., 418; Lord Darnley v. London, Chatham & Dover Rwy. Co., 1 De G., J. & S., 204; Walker v. Armstrong, 8 De G.; M. & G., 531; 39 E. L. & E., 450; Hume v. Pocock, L. R., 1 Eq. Cases, 662.* In that court the record is made up for the

appellate tribunal, and the latter, not having original juris-
diction, will be cautious about allowing changes in the
record.

Questions of consequence may arise touching the terms
allowed or refused below, but these are quite distinct from
questions concerning the power to permit the amendment
at all.

Here the amendments were plainly of such nature as
to be within the competency of the court.

Before they were made, the defense assumed the rele-
vancy of the matter they introduced. It must be taken
to have drawn into question the Smith and Bemenderfer
mortgages. The original answer stated that mortgages other
than the Ashley and Sweet mortgages existed on the prop-
erty to a "considerable amount," and it based claims upon
that fact, and it must be assumed that the Smith and Be-
menderfer mortgages were intended; since there is no hint
of any others.

There is no basis for the objection urged.

It is not necessary to inquire what effect upon the right
to make this objection might be regularly and justly ascribed
to the fact of Breese's making answer to the amendments
under the order which allowed them.

It is next urged that Breese's affidavit entitled him to
sixty days' further time to make proofs.

It is a sufficient answer to this to say that the affidavit
made no case for further time. It conveyed no informa-
tion to the court as to what facts were expected to be proved
by Rogers. This should have been done to enable the court
to determine upon the relevancy and importance of the
expected proofs.—*Thayer v. Swift, Walk. Ch., 384; Meach
v. Chappell, 8 Paige, 135; Sea Ins. Co. v. Stebbins, Id.,
565.*

The permission to defendant to take further proof in
open court at the hearing could authorize no complaint on
his part. It was a provision in the special order for his
benefit. He made no showing for time to take proofs out
of court.

SLATER *v.* BREESE.

I will now advert to the equities between these parties in respect to the mode of subjecting the premises pledged for payment of the mortgage in suit.

By his answer, Breese first insists that his portion should be sold first. Further on, however, he contends that the grist-mill property ought to be sold before his portion. He acquired his interest with notice of the preëxisting incumbrances complainant holds. He has no lien on the grist-mill property. His right is subsequent in time to complainant's right under the mortgage in suit, and also to complainant's right under the mortgages of Smith and Bemenderfer on the grist-mill property. Complainant is entitled, in any event, if necessary, to have recourse to the whole property it encumbers, for the purpose of making the amount of the mortgage in suit. The original answer, and the amendments to it, and the offer of proof by defendant, admit in effect, and almost in terms, that the Smith and Bemenderfer mortgages are actual existing incumbrances for some amount, more or less, on the grist-mill property, and the case contains nothing to the contrary.

The claim that an undivided half of the grist-mill property and the piece between became expressly charged with the Ashley mortgage under subsequent conveyances, in such manner as to warrant defendant in insisting that complainant should be required to sell and exhaust that interest first, is not sustained. It appears that the deed of Spaulding to Sarah Smith of January, 1870, stated that the grant was subject to that mortgage, and that the deed from Sarah Smith and Myron Smith to Joseph Rogers and Joseph Bemenderfer of October, 1870, stated that the grant was subject, not only to the same mortgage, but also to complainant's second mortgage. The language neither expressed nor implied any assumption by the grantees of the payment of the mortgage in suit, or any intention that the particular interest granted should be considered as charged thereafter with the whole amount of the old mortgage, in preference to the other property, and there was

nothing in the situation of Spaulding or Mrs. Smith to
influence them to desire any thing of that kind.    They
were not original mortgagors, but intermediate holders of a
portion of the mortgaged premises, and were never liable
except in respect to the land.    The only reasonable sup-
position is, that the real purpose of the statement in the
deeds was to except the named incumbrances from the cov-
enants.

The defendant now repudiates the first position in his
answer, that the property ought to be sold in the inverse
order of the incumbering, and insists upon his second posi-
tion.    That rests entirely on the maxim of equity that
where one has a lien on two funds and another a later lien
on one of them, the former is bound to exhaust the singly
charged fund before resorting to that which is doubly
charged.    The maxim is grounded in natural justice, and
contemplates that so long as the prior right is in no man-
ner prejudiced, it should be exercised in the way most
advantageous for later rights, and if the conditions supposed
by it exist, it works beneficially for junior interests and
without detriment to others.    But before attempting to apply
it, it is necessary to see whether the required conditions are
found.    If they are not, a resort to the principle will lead
to results absurd and inequitable.    How is it here?    The
argument for Breese assumes that the premises in which he
is interested are bound first by the mortgage in suit and
secondly by the Sweet mortgage, under which he claims,
and hence are doubly charged, and that the grist-mill prop-
erty is only burdened by the mortgage in suit, and there-
fore ought to be first sold.    This assumption is plainly
contrary to the fact.    The grist-mill property, as well as
that claimed by Breese, is burdened by a second charge, and
not only so, but the second charge on this property is
earlier than Breese's.    We have nothing in the situation of
the grist-mill property to correspond with the singly charged
fund.    The state of facts is not appropriate to the doctrine.
There is no ground to call forth the equity.    The argument

on the part of Breese is, in effect, that his interest being the latest should be preferred and saved to him by compelling complainant to procure satisfaction of his first and dominant security by the sacrifice of his second and intervening security. The bare statement of the proposition exposes its unsoundness. The grist-mill property is subject equally with that claimed by Breese to a double charge; and as the second charge upon it is prior to Breese's, it has an equitable preference to which his holding is subject. And the fact that such second charge belongs to complainant cannot stifle the equity or repel the principle. It is as much entitled to attention and regard when Breese insists upon its sacrifice to exempt his later interest in the other property, as though it belonged to a third party.

Breese's claim was therefore not warranted, and considering the priorities and the other facts, he was not entitled to object against the sale of his property before that of the grist-mill property.

The ruling of this court touching the "Woodward avenue lot" in *Cooper v. Bigly, 13 Mich., 463,* is a distinct authority to that effect. See also *Hastings Case, 10 Watts, 303; Averall v. Wade, Lloyd & G., 252; Wise v. Shepherd, 13 Ill., 41.*

But the decree did not require his property to be first sold. It was shaped more advantageously for him. It provided that the grist-mill property, the saw-mill property, and the lot between, should be sold before his, and merely qualified this concession by directing that the sale should be subject to complainant's rights under the Smith and Bemenderfer mortgages and under his purchase on the statutory foreclosures.

As the position which Breese occupied did not allow him to claim the preference thus given to him in the order of sale, and it was a concession beyond his equities, and as he was not entitled to insist upon any order or mode of sale for his own benefit which would prejudice complainant's rights

under the Smith and Bemenderfer mortgages, he has no
just ground for complaining against the order allowing the
grist-mill property to be sold before his, that it provided.
that such sale should not impair complainant's rights.

The refusal of Breese's offer of proof was not error.
He was not entitled to insist upon giving evidence that com-
plainant's incumbrance under the Smith and Bemenderfer.
mortgages was less or more than had been claimed. That
it was something, was, as before stated, substantially admit-
ted; and being something, Breese, as holder of the later.
incumbrance on property equitably subject to be first con-
sumed, and without interest in or lien upon the grist-mill.
property, was in no situation to insist on making proof to
show how much of the grist-mill property would be required
to satisfy the Smith and Bemenderfer mortgages. And at
the same time, as before stated, complainant was equitably
entitled to claim that his rights and interests under those
mortgages, whether his interest was much or little, should
be protected and not be sacrificed or prejudiced for the relief
or ease of the later interest of Breese. The question of
priority of sale, as between the grist-mill property and that
of Breese, to satisfy the mortgage in suit, hinged entirely on
the existence and not on the amount of the incumbrance
on the grist-mill property under the Smith and Bemender-
fer mortgages, and the fact that the court ordered that this
last named property should be sold before that of Breese,
and that complainant acquiesced, cannot be regarded as giv-
ing any ground to Breese to insist on further concessions.

A point is made in defendant's brief against allowing.
more than seven per cent. interest as against his premises.
It appears to be without basis or aim. The amount due
was found by a commissioner, to whom the case was referred
therefor, and in decreeing the amount the court acted on the
report, which the defendant seems to have acquiesced in.
No exception or objection was taken to it on which to raise
any question.—*Thorne v. Hilliker, 12 Mich., 215; Butter-*

*field v. Beardsley, 28 Mich., 412, and cases.* But this is not all. On comparing the decree with the report, it appears that no more than seven per cent. was allowed.

The decree below should be affirmed, with costs.

The other Justices concurred.