### KLEVER *v.* KLEVER.

1. CONTRACTS—CONSTRUCTION—AMBIGUITY.

   The Supreme Court must construe an ambiguous agreement as a whole upon the record before it and determine what was the real intent of the parties and, if not violative of law, give effect thereto.

2. SAME—INTENT—LITERAL SENSE OF TERMS.

   Intention of parties in making contract should be ascertained by construing it in the light of circumstances existing at the time it was made and manifest intent must prevail over the literal sense of terms.

3. SAME—INTENT.

   The intent of the parties should be gleaned from the written instrument of which construction is sought, if it is reasonably possible to do so.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 12 Am Jur, Contracts §§ 227, 241.
[2] 12 Am Jur, Contracts §§ 236, 247.
[3] 12 Am Jur, Contracts § 232.
[4] 12 Am Jur, Contracts §§ 228, 229.
[6, 8, 14] 55 Am Jur, Vendor and Purchaser § 359.
[7] 12 Am Jur, Contracts § 243.
[9] 55 Am Jur, Vendor and Purchaser § 355.
[10, 11] 49 Am Jur, Statute of Frauds § 349.
[12] 12 Am Jur, Contracts § 251; 16 Am Jur, Deeds § 164.
[13] 16 Am Jur, Deeds § 342.

4. SAME—INTENT—CONSTRUCTION—REMAKING OF CONTRACT.

It is not the province of the court by construction or by the addition of words or punctuation to remake the contract of the parties or to find a meaning not intended, but where an ambiguity exists the court must determine, if possible, the true intent of the parties by construction.

5. SAME—INTENT—UNGUARDEDLY USED PHRASES.

The intention of the parties as apparent from the entire instrument, if not repugnant to any rule of law, will control the meaning of any particular word or phrase unguardedly used and seeming to indicate a different intention.

6. HUSBAND AND WIFE—CONTRACTS—CONVEYANCES—CONSIDERATION.

Agreement between husband and wife made upon reconciliation after divorce proceedings had been started, wherein it was provided that wife was to be entitled to all of his real and personal property in the event the parties continued to live together until the husband died and in the event the wife survived the husband is construed as effecting a conveyance of all his property upon his death with her surviving him; it also appearing that by the agreement the wife gave up a valuable consideration by way of cancellation of a mortgage obligation.

7. CONTRACTS—CONSTRUCTION—CONFLICTING PROVISIONS.

The first of two conflicting clauses or provisions in a contract shall be received as controlling and the latter rejected.

8. HUSBAND AND WIFE—CONTRACTS—CONVEYANCES—IDENTIFICATION OF PROPERTY.

Contract between husband and wife incident to reconciliation effected after divorce proceedings had been commenced whereby she gave up a valuable consideration and fully performed her part of the agreement effected transfer to her of all his property upon her surviving him at death, where such transfer was provided for by the agreement and the property was definitely identifiable.

9. ESTATES—VENDOR'S INTEREST IN LAND CONTRACT IS PERSONALTY.

The vendor's interest in a land contract is personal property.

10. FRAUDS, STATUTE OF—DESCRIPTION IN MEMORANDUM—EXTRINSIC TESTIMONY.

Extrinsic testimony is admissible to supplement a description in a memorandum for the sale of real estate, or an interest therein, for the purpose of identifying the property and which is not contradictory or inconsistent with the mem-

orandum description and merely to show that no other property could have been in contemplation (CL 1948, § 566.-132 *et seq.*).

11. SAME—DESCRIPTION IN MEMORANDUM—EXTRINSIC EVIDENCE— IDENTIFICATION.

It is not essential that the description in a memorandum for the sale of real estate have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless but the terms must be such that with the assistance of external evidence the description, without being contradicted or added to, can be connected with and applied to the very property intended and to the exclusion of all other property (CL 1948, § 566.132 *et seq.*).

12. DEEDS—CONSTRUCTION.

A deed or other written instrument is to be construed so as to render it valid and effectual, rather than void.

13. SAME—ABSENCE OF COVENANT OF WARRANTY.

A deed importing to convey a fee title permits the grantee to have the benefit of such titles as the grantor may subsequently acquire even though the deed lacks a covenant of warranty.

14. HUSBAND AND WIFE—CONSTRUCTION OF CONTRACT—IDENTIFICATION OF PROPERTY—TIME.

An agreement whereby wife who survived her husband was to get all of his real and personal property was to get such property as he had at the time of his death and did not relate to the property the husband had at the time the agreement was made.

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted January 10, 1952. (Docket No. 36, Calendar No. 45,323.) Decided April 7, 1952.

Bill by Elizabeth Klever against Edward Klever and another to establish her ownership of real estate. Decree for plaintiff. Defendants appeal. Affirmed.

*Reber & Reber,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendants.

NORTH, C. J. Plaintiff filed her bill of complaint praying that the court decree she is the sole and absolute owner in fee simple of certain lands located in Ashland township, Newaygo county, Michigan. The record title to the land in suit was in plaintiff's husband, Harry Klever, at the time of his death in August, 1950. At the time this case was heard in the circuit court no proceedings had been taken to probate his estate. Defendants deny that plaintiff is entitled to the relief sought. After full hearing the circuit judge decreed plaintiff was entitled to the relief prayed. Defendants have appealed.

Plaintiff, Elizabeth Klever, is the widow of Harry F. Klever, deceased. Prior to September 16, 1936, she filed a bill for divorce. On the date noted they entered into a property settlement agreement in writing wherein it was stated that such agreement was in consequence of "irreconcilable differences" and that the parties were "living separate and apart." Details of the property settlement will be more fully noted hereinafter. Presently it is sufficient to state that among the property holdings of Elizabeth Klever and her husband was a 160-acre farm located in Ashland township, Newaygo county, Michigan, hereinafter referred to as the Harry Klever farm. Plaintiff and her husband were also possessed of other property of substantial value, including household furniture and furnishings, an automobile, a bank account, and also a promissory note given by a Mr. and Mrs. Pardee in the sum of $550. By this agreement a definite division of their property and a release of the husband from marital obligations to the wife were agreed upon. The details are not important incident to disposition of the pending case. A conditional reconciliation having been consummated, Harry and Elizabeth Klever signed and acknowledged a second agreement or contract on October 10, 1936. It is under the terms of this latter

contract that plaintiff asserts her right to the relief sought in the instant case.

The property to which plaintiff, subject to its sale on land contract, seeks to be decreed "the sole and absolute owner, in fee simple," consists of 166 acres, also located in the township of Ashland, and at the time of her death was owned by Anna C. Klever, the mother of Harry Klever and defendant Edward Klever. We shall hereinafter refer to this farm as the Anna C. Klever farm. The mother's property was inherited in equal shares by the 2 sons, she having died intestate in 1947. In October, 1948, Harry Klever purchased his brother's interest in the Anna C. Klever property. Shortly thereafter Harry Klever and plaintiff herein as his wife sold the Anna C. Klever 166-acre farm on land contract to Thomas Lynch and Donald J. Lynch; and in the instant suit plaintiff claims to be "the sole and absolute owner of the vendors' interest in said land contract."

Harry Klever, husband of plaintiff, died intestate in August, 1950, leaving as his sole heirs at law his brother Edward and plaintiff herein. In consequence, defendant Edward Klever claims he has inherited a one-half interest in the Anna C. Klever farm and in a substantial amount of personal property owned by Harry Klever at the time of his death, all of which defendants assert should be held to be a part of the intestate estate of Harry Klever. But, on the contrary, plaintiff contends that by virtue of the agreement entered into between herself and her husband on October 10, 1936, she is the sole owner of the property possessed by her husband at the time of his demise. The controlling provisions and corresponding paragraphs of the reconciliation contract of October 10, 1936, in substance, are as follows:

(1) That each of the parties shall retain the property acquired by them under the terms of the agree-

ment dated September 16, 1936, "and neither of the parties hereto shall be entitled to any other interests in any real or personal property owned or hereafter acquired by the other, or any right or claim against the other, *except as hereinafter specifically mentioned."* (Emphasis supplied.)

(2) That the parties live together as husband and wife the same as prior to the differences referred to in the agreement of September 16, 1936, "it being understood that the household expenses and clothing and wearing apparel of the parties hereto shall be paid for out of the income of the farm and personal property owned by said party of the first part (the husband)."

(3) That in the event of the death of first party prior to the death of second party, before any subsequent separation should take place between them, "said party of the second part shall be entitled to all of the real and personal property, of whatsoever name or nature, that may be owned by said party of the first part at the time of his death, or of which he shall die seized, and this instrument shall operate as a conveyance of the same to said party of the second part, contingent upon the happening of the event aforesaid, and not otherwise."

(4) That in the event the parties lived together for a period of 2 years from and after the date of said agreement (October 10, 1936) the real estate mortgage on 40 acres of the Harry Klever farm executed by first party to second party, bearing date September 16, 1936, in the sum of $2,000, was to be released and discharged and first party was to be released from all indebtedness to second party thereunder; and at the same time deeds of conveyance were to be executed by the parties for the purpose of vesting in them as tenants by entireties the sole and absolute title to the 160 acres of land, the Harry Klever farm.

The parties did live together until the death of Harry Klever in 1950, and after the expiration of the 2 years above provided, the $2,000 mortgage was discharged, and title to the Harry Klever farm placed in plaintiff and her husband as tenants by entireties. This paragraph 4 of the agreement further provides that upon the fulfillment of the specified conditions "the obligations of the parties hereto under said agreement of September 16, 1936, and under this agreement, shall thereupon cease and terminate."

The parties agree that there are no creditors of Harry Klever who might have an interest in the outcome of the instant litigation. The relief sought by plaintiff's bill is: "That plaintiff be decreed to be the sole and absolute owner, in fee simple, of the premises above described" (*i.e.*, the 166-acre Anna C. Klever farm, subject to vendees' interest in an outstanding land contract); and that a certified copy of the decree may be made a matter of record evidencing plaintiff's title to said farm.

As above noted, defendants claim that the property in suit should be held to be part of the estate of Harry Klever, who died intestate, of which estate defendant Edward Klever would take one-half by right of inheritance. The exact provisions in the agreement of October 10, 1936, upon which decision must be more particularly focused, are set forth in the paragraph marked (3) above, and paragraph (4), specifically the portion thereof which reads, "and the obligations of the parties hereto under said agreement of September 16, 1936, *and under this agreement,* shall thereupon cease and terminate." (Emphasis supplied.)

Appellants' first contention is that the agreement of October 10, 1936, and specifically the provision therein last above quoted, terminated all obligations of the parties as provided in said agreement; partic-

ularly the agreement of Harry Klever that on condition he and plaintiff did not thereafter separate and she survived him he would leave to her all of the real and personal property of which he died seized.

The portion of the agreement stressed by appellants render the instrument somewhat ambiguous. In consequence, the Court, on the record before it, must determine upon consideration of the agreement as a whole, what was the real intent of the parties; and, if not violative of law, give effect thereto.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate. To arrive at a proper interpretation of particular language, the entire contract must be considered." *McIntosh* v. *Groomes,* 227 Mich 215, 218.

"Intention of parties in making contract should be ascertained by construing it in the light of circumstances existing at the time it was made and manifest intent must prevail over the literal sense of terms." *Montgomery* v. *Central National Bank & Trust Co. of Battle Creek* (syllabus), 267 Mich 142.

"The intent of the parties should be gleaned from the written instrument of which construction is sought, if it is reasonably possible to do so." *Galperin* v. *Michelson* (syllabus), 301 Mich 491.

"In construing a contract the intention of the parties, if not forbidden by law, is to be effectuated." *Hustina* v. *Grand Trunk Western Railroad Co.* (syllabus), 303 Mich 581.

The primary fact is that plaintiff's right to the property in suit upon her survival of her husband was as clearly and definitely stated in paragraph 3 of the agreement as could be done; including "and this instrument shall operate as a conveyance of the same to said party of the second part." But appellants assert that the words in a subsequent para-

graph, relative to terminating the obligations of the parties, nullify the earlier provision of the agreement that in event plaintiff should survive her husband she would thereupon be possessed of all the property of which he died seized. Arguing that wherever possible all parts of an agreement should be given effect, appellants say:

"Paragraph 4 provides for disposition of the property and obligations if the parties are alive and living together at the end of 2 years. This leaves but one conclusion, paragraph 3 must cover the contingency of *the death of the party of the first part within a period of 2 years from the date of the agreement.* By reading into paragraph 3 the words 'within a period of 2 years from and after the date hereof,' as is found in paragraphs 4 and 5, we can reconcile all 3 paragraphs, with all of them being consistent, and all of them meaningful. In this way all contingencies are provided for, which the instrument seems to be attempting to accomplish, and the intent of the parties is clear."

The fundamental weakness of the above contention is that paragraph 3 of the agreement does not have in it the limitation which appellants would insert therein—*i.e.: "Within a period of 2 years from the date of the agreement."* It was only in subsequent paragraphs that the limitation of 2 years was inserted.

"We are well aware of the settled rules of law, so well established that citation of authority therefor is unnecessary, that it is not the province of the court by construction or by the addition of words or punctuation to remake the contract of the parties or to find a meaning not intended. Where ambiguity exists, however, it is the duty of the court to determine, if possible, the true intent of the parties by construction of the instrument." *Fox* v. *Detroit Trust Co.,* 285 Mich 669.

Further, we are of the opinion that, without resorting to the suggestion of appellants, the agreement may be read and understood in a way that will render all of its provisions consistent and meaningful, and in full accord with the obvious intent of the parties to the agreement. For example, among other obligations of the parties than those imposed in paragraph 3 we find this in paragraph 2: "It being understood that the household expenses and clothing and wearing apparel of the parties hereto shall be paid for out of the income of the farm and personal property owned by said party of the first part." Another provision of the agreement which the parties might very likely have had in mind in providing that their obligations "under this agreement, shall thereupon cease and terminate," might reasonably pertain to the following portion of paragraph 1 of the agreement: "That each of the parties hereto shall retain the property acquired by each of them under the terms of said agreement bearing date of September 16, 1936, * * * except as hereinafter specifically mentioned." Under the agreement of September 16, 1936, plaintiff became possessed of a $2,000 mortgage which she agreed to and did cancel as provided in paragraph 4 of the October 10, 1936, agreement. And it would seem to be a plausible construction of the terminating provision in paragraph 4, upon which appellants rely, to hold that the parties had in mind that after the expiration of the 2 years and the placing of the title to the Harry Klever 160-acre farm in entireties, together with plaintiff's cancellation of the $2,000 mortgage and her husband's personal liability incident thereto, that part of the agreement was to be considered by the parties as final and any provisions to the contrary in the agreement should be inoperative. In *Detroit Trust Co.* v. *Manilow,* 272 Mich 211, 218, we said:

"We have repeatedly held that the intention of the parties to an instrument, when that intention is apparent from the entire instrument and not repugnant to any rule of law, will control the meaning of any particular word or phrase unguardedly used and seeming to indicate a different intention."

Paragraph 3 of the agreement, upon which plaintiff relies, is complete in itself as to the subject matter thereof. It plainly provides that if plaintiff and her husband continue to live together until his death with her surviving, she "shall be entitled to all of the real and personal property" of which he died seized, "and this instrument shall operate as a conveyance of the same" to plaintiff, "contingent upon the happening *of the event aforesaid,* and not otherwise." (Emphasis supplied.)

Finally it may also be noted that the provisions in paragraph 3 of the agreement, upon which plaintiff relies, preceded the provisions in paragraph 4 upon which defendants rely; and one of the rules of construction to which resort may be had is that where in an instrument there are 2 conflicting clauses or provisions, the first shall be received as controlling and the latter one rejected. See *Putnam* v. *Pere Marquette R. Co.,* 174 Mich 246; *J. J. Fagan & Co.* v. *Burns,* 247 Mich 674 (67 ALR 522); *Psutka* v. *Michigan Alkali Co.,* 274 Mich 318; *Higbie* v. *Chase,* 306 Mich 577, 595.

It scarcely seems necessary to also note that incident to the final consummation of the October 10, 1936, agreement plaintiff gave a valuable consideration by cancellation of the $2,000 mortgage obligation of her husband which she held at that time.

We are fully convinced from consideration of the agreement of October 10, 1936, as a whole, and of the facts and circumstances attending its execution, that the parties thereto clearly intended that if they

continued to live together as husband and wife until the husband's death, survived by the wife, she should thereupon become possessed of all the property of which he died seized.

Appellants' remaining contention is that the relief sought by appellee cannot be decreed because: "The alleged conveyance to Elizabeth Klever contained in paragraph 3 (of the October 10, 1936, agreement) is invalid and unenforceable under the statute of frauds."* We are not in accord with this contention. The reasons urged by appellants in asserting this claim are: (1) That said paragraph 3 does not contain a description of any property; (2) That plaintiff's husband was not the owner of the Anna C. Klever 166-acre farm at the time the agreement of October, 1936, was executed; and (3) That the said agreement contains no warranty or covenant of title.

Notwithstanding the above, we hold that the provisions in paragraph 3 of the October, 1936, agreement are valid and enforceable for the following reasons: The agreement was a contract between the parties for which plaintiff not only gave a valuable consideration, but she fully performed her part of the agreement and there was complete compliance with the "contingent" conditions applicable to said paragraph 3 prior to the time plaintiff sought relief herein. Further, the property included in and affected by said paragraph 3 could be and was definitely identified by the record title thereof. The right that plaintiff asserts therein is personal property, it being only the vendors' interest in the land contract to Thomas Lynch and Donald J. Lynch. *Detroit Trust Co.* v. *Baker,* 230 Mich 551; *In re McBride's Estate,* 253 Mich 305.

---

* CL 1948, § 566.132 *et seq.* (Stat Ann § 26.922 *et seq.*).

Under our decisions in *Cramer* v. *Ballard,* 315 Mich 496, and *Eggleston* v. *Wagner,* 46 Mich 610, the identification of the property which is the subject matter of paragraph 3 of the October, 1936, contract was sufficient to entitle plaintiff to the equitable relief sought.

"To the extent that our previous decisions may be considered inconsistent with this opinion, on the specific question as to admissibility of extrinsic testimony to supplement a description in a memorandum for sale of real estate, or an interest therein, for the purpose of identifying the property, not contradictory or inconsistent with the memorandum description, but merely to show that no other property could have been in contemplation, it must be understood that the court now declines to follow such decisions." *Cramer* v. *Ballard, supra,* 511.

"They (the adjudicated cases) are not all harmonious. But they agree in this, that it is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject matter. The terms may be abstract and of a general nature, but they must be sufficient to fit and comprehend the property which is the subject of the transaction; so that with the assistance of external evidence, the description, without being contradicted or added to, can be connected with and applied to the very property intended and to the exclusion of all other property." *Eggleston* v. *Wagner, supra,* 618.

"The rule upholding the sufficiency of the description where it may be fitted by extrinsic evidence to a particular lot or tract of land has been applied where the land was described as all of or a certain interest in all of the land owned by the vendor, or all of the land owned by him in a certain county, or as that land previously sold to the vendor by the purchaser or by a third person." 49 Am Jur, p 662.

Touching the sufficiency of property descriptions in proceedings in equity (see *Cramer* v. *Ballard, supra*) of this character, we have said the following are ample:

" 'Also all my right, title, and interest in and to my father's estate at law, in S. S. Austin's estate.'

"* * * It is not necessary that a conveyance shall specifically describe premises sought to be conveyed. It is sufficient if its terms are such as to permit them to be identified. * * * The deed describes the land as all of the grantor's right, title, and interest in and to S. S. Austin's estate at law. There could be no great difficulty in ascertaining what S. S. Austin's estate at law was." *Austin* v. *Dolbee,* 101 Mich 292.

"The deed from these heirs described the property as 'all their right, title, and interest in and to the estate, property, and effects of the late Lorenzo M. Mason, * * * be the said estate real, personal, or mixed,' et cetera. This description was sufficient." *Huron Land Co.* v. *Robarge,* 128 Mich 686.

"In *Anderson* v. *Baughman,* 7 Mich 69 (74 Am Dec 699), it was held that a deed or other written instrument is to be construed so as to render it valid and effectual, rather than void. This rule was approved in *Morse* v. *Hewett,* 28 Mich 481." *Stamp* v. *Steele,* 209 Mich 205.

"If it is apparent that the form and substance of the instrument takes it beyond the limitation of a quitclaim deed so as to show an intention to convey all interest, present and prospective, such instrument will be effective to convey any and all after-acquired title." 162 ALR 569.

"So, where the deed imports to convey a fee, though it lack a covenant of warranty, the doctrine of estoppel permits the grantee to have the benefit of such titles as the grantor may subsequently acquire." *Pendill* v. *Marquette County Agricultural Society,* 95 Mich 491.

Our holding in *Bassett* v. *American Baptist Publication Society,* 215 Mich 126 (15 ALR 213), is adverse to appellants' claim that plaintiff in the instant case cannot validly assert a right to property in which her husband had no interest at the time they entered into the contract of October 10, 1936. We there said:

"We cannot agree with counsel for defendant that the promise related only to property Miss Carpenter had at the time the agreement was made. Nothing was to be given until Miss Carpenter's death and her estate at that time determined what was due plaintiff."

The decree entered in the circuit court is affirmed, with costs to appellee.

DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.