*In re* CUMMIN ESTATE

Docket No. 235495. Submitted March 12, 2003, at Grand Rapids. Decided September 9, 2003, at 9:15 A.M.

Edward Murphy, personal representative of the estate of June L. Cummin, filed a petition in the Clare Probate Court against his sister, Beth Hegyi, after the respondent transferred real property owned by their mother, decedent June Cummin, to herself, which the respondent rented and later sold. The petitioner alleged that the respondent converted estate assets, and sought an accounting and the imposition of a constructive trust. The petitioner also argued that the respondent exerted undue influence over the decedent. Previously, the decedent executed a durable power of attorney appointing the respondent as her attorney in fact and authorizing the respondent to lease, sell, or assign the decedent's real property. Although the decedent made numerous requests that the respondent transfer the real property to herself, the respondent did not do so until after the deceased's mental health declined. The respondent did not disclose the transfer to the petitioner until after the decedent's death, and after he had inquired about receiving his share of the estate. The probate court, Thomas P. McLaughlin, J., concluded after a bench trial that the respondent breached the fiduciary duty she owed the decedent as her attorney in fact by engaging in self-dealing. The respondent appealed.

The Court of Appeals *held*:

The judgment of the probate court must be reversed and the case must be remanded.

Reversed and remanded.

WILDER, J., stated that the trial court erred as a matter of law in concluding that the respondent engaged in self-dealing, because an attorney in fact may engage in self-dealing if the principal consents to the transaction and the details of it are fully disclosed. The provision against self-dealing by fiduciaries set forth in the Estates and Protected Individuals Code (EPIC), MCL 700.1214, and its predecessor, does not apply to this case because the respondent's accrued, vested right as owner of the real property would be impaired by invalidating the transaction, contrary to MCL 700.8101(d)(2) of EPIC and *In re Smith Estate*, 252 Mich App 120 (2002). The trial court

further erred in concluding that the passage of time and change in
the decedent's mental status affected the respondent's authority to
transfer the real property pursuant to the durable power of attor-
ney. MCL 700.5501, 700.5502. The judgment of the probate court
must be reversed, but because the probate court made conflicting
factual findings regarding the decedent's intent and consent to the
respondent's transfer of the property, and the respondent's behav-
ior in effecting the transfer, the matter must be remanded for appli-
cation of the law to the facts of this case as the probate court finds
them.

SCHUETTE, P.J., concurring in part and dissenting in part, stated
that he concurs with the majority's decision to reverse and remand
the matter to the probate court, but disagrees with the majority's
conclusion that § 8101(2)(d) of EPIC and the decision in *In re Smith
Estate*, 252 Mich App 120 (2002), preclude application of EPIC's pro-
vision against self-dealing, because the respondent holds no vested
right that would be impaired under the facts of this case.

*Currie Kendall Polasky Meisel, PLC* (by *R. Drum-
mond Black*), for the petitioner.

*Robert T. Rhead* for the respondent.

Before: SCHUETTE, P.J., and SAWYER and WILDER, JJ.

WILDER, J. Respondent Beth A. Hegyi appeals by
right the probate court's judgment ordering her to pay
into the estate of decedent June L. Cummin the funds
respondent received from renting and selling real
property previously owned by decedent, respondent's
mother. We reverse and remand.

I. FACTS AND PROCEEDINGS

In June 1992, decedent executed a durable power
of attorney that conferred on respondent the author-
ity to "lease, sell, assign, and convey interests in real
or personal property of any kind now or hereafter
owned by [decedent] on such terms and agreement as
said attorney-in-fact may solely and discretionarily

determine . . . ." On the same day, decedent executed
a will that named respondent as her estate's personal
representative and devised the residue of her estate
to her children, respondent and petitioner, Edward
Murphy. Decedent's will named petitioner as the alter-
nate personal representative.

Around the same time, decedent moved into
respondent's home and later moved into a mobile
home that she purchased and located next to respon-
dent's residence.

Approximately sixteen months later, decedent
moved into a residential care facility because she
needed skilled nursing care. Over the next two years,
decedent's dementia, from which she suffered inter-
mittently before moving into the residential care facil-
ity, progressively worsened to the point that she occa-
sionally failed to recognize members of her family.
She lived in the residential care facility until her
death on April 28, 1998.

Respondent and her husband testified at the bench
trial over a period of several years, decedent repeat-
edly instructed respondent to transfer decedent's real
estate to herself. According to respondent, decedent
gave one of these instructions shortly after decedent
transferred a portion of her real estate to decedent's
stepdaughter's family. Decedent continued to instruct
respondent to transfer the property after she moved
into the residential care facility. Decedent requested,
however, that when respondent transferred the prop-
erty, respondent retain a life estate in the property for
decedent.

On December 10, 1996, nearly two years after dece-
dent moved into the residential care facility, respon-
dent, acting as decedent's attorney in fact, transferred

decedent's real property to herself by quitclaim deed, reserving a life estate in the property for decedent. After respondent executed the quitclaim deed, respondent rented the property and received $3,000 in rental payments. On April 14, 2000, respondent sold the property for $180,000.

Shortly after decedent died, petitioner inquired about receiving his share of the estate. Respondent did not disclose to him at that time that she had transferred the real estate to herself. Later, after petitioner called respondent, respondent informed petitioner that she had transferred the property to herself. On February 25, 2000, petitioner filed a petition for commencement of proceedings in the probate court and requested that he be appointed personal representative of the estate. The probate court appointed him the estate's personal representative on April 27, 2000. On July 19, 2000, petitioner filed a complaint against respondent in which he (1) alleged that respondent converted the estate's assets, (2) demanded an accounting of decedent's assets, and (3) requested that the probate court impose a constructive trust over decedent's real and personal property, including proceeds from the sale or rental of the real property. During opening arguments at the trial, petitioner argued that respondent obtained ownership of the real property by exerting undue influence over decedent.[1]

----

[1] Petitioner did not plead undue influence in his complaint, but raised the issue in his motions for summary disposition before asserting it at trial. Respondent requested a directed verdict immediately following petitioner's opening statement because petitioner had not alleged undue influence in his complaint. The probate court denied respondent's motion, finding that although the words "undue influence" were not specifically

In its written opinion, the probate court determined
that decedent had not been unduly influenced when
she executed the power of attorney. The probate
court also found that although respondent and her
husband credibly testified that decedent wanted
respondent to have the property, respondent did not
make the transfer until several months after decedent
became mentally unsound and respondent engaged in
behavior that was inconsistent with merely wanting
to fulfill decedent's wishes, such as misleading peti-
tioner concerning the status of the property. Accord-
ingly, the probate court concluded that respondent
breached her fiduciary duty, arising from her status
as decedent's attorney in fact, to refrain from self-
dealing. The probate court held that respondent's
transfer of the real property to herself created a con-
structive trust in favor of the estate and that the
estate was entitled to the money respondent received
from renting and selling the property. This appeal
followed.

## II. STANDARD OF REVIEW

This Court reviews for clear error a trial court's fac-
tual findings and reviews de novo questions of law,
including issues of statutory construction. *Thomas v
New Baltimore*, 254 Mich App 196, 200; 657 NW2d
530 (2002), citing *Schroeder v Detroit*, 221 Mich
App 364, 366; 561 NW2d 497 (1997).

---

used, the complaint contained sufficient allegations to inform respondent
of petitioner's claims.

### III. ANALYSIS

Respondent contends that the probate court erred by concluding that, despite decedent's instructions that respondent transfer the property to herself, respondent breached her fiduciary duty by transferring the property.[2] We conclude that the probate court erred in its legal analysis and, because the probate court's findings of fact conflict to the extent that we cannot apply them to the law governing this case, we remand for clarification and application of the law to the facts.

Respondent, as decedent's agent, owed a common-law fiduciary duty to decedent. *In re Susser Estate,* 254 Mich App 232, 235-236; 657 NW2d 147 (2002). Common-law agency principles, which generally

---

[2] Respondent also argues that the probate court improperly permitted petitioner to assert a claim of undue influence and that the probate court improperly denied her second motion for directed verdict, made at the close of petitioner's proofs. The probate court did not abuse its discretion by permitting petitioner to assert a claim of undue influence, in light of its accurate conclusion that respondent was reasonably informed of the claim. See *Weymers v Khera,* 454 Mich 639, 654; 563 NW2d 647 (1997), citing *Dacon v Transue,* 441 Mich 315, 328; 490 NW2d 369 (1992); *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 658; 213 NW2d 134 (1973). Contrary to respondent's assertions, this claim was not newly asserted at trial. Petitioner raised this claim before trial during hearings on three motions for summary disposition, and, during one such hearing, the probate court characterized this case as "an undue influence case." Although respondent argued that the evidence did not support a claim of undue influence, respondent did not object to petitioner's failure to specify undue influence in the complaint.

Ordinarily, we review de novo a trial court's decision concerning a motion for a directed verdict. *Wiley v Henry Ford Cottage Hosp,* 257 Mich App 488, 491; 668 NW2d 402 (2003). However, respondent's argument consists of merely conclusory statements that do not meaningfully analyze this issue. Accordingly, respondent did not sufficiently brief this issue to merit our review. *Id.* at 499 (stating that a party may not "leave it to this Court . . . to . . . unravel or elaborate its argument . . . ."), citing *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998).

apply to powers of attorney, permit an agent to personally engage in a transaction with the principal with " 'consent of the principal after a full disclosure of the details of the transaction.' " *Id.* at 234-235, quoting *VanderWall v Midkiff*, 166 Mich App 668, 677-678; 421 NW2d 263 (1988); *Persinger v Holst*, 248 Mich App 499, 503; 639 NW2d 594 (2001), citing *VanderWall, supra* at 677.

Certain provisions of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, and its predecessor, the Revised Probate Code (RPC), MCL 700.1 *et seq.*, restrict the authority of fiduciaries to personally engage in transactions with the estates that they represent. These limiting provisions, however, do not apply in this case. MCL 700.1214 of EPIC prohibits self-dealing by fiduciaries, except in limited circumstances that are not present in this case.[3] EPIC was in effect at the time of the proceedings in this case and, therefore, would ordinarily apply. MCL 700.8101(2)(b). However, because respondent's accrued right as owner of the property would be impaired by invalidating the transaction or imposing a constructive trust, subsection 8101(2)(d) precludes applying § 1214 to invalidate respondent's transfer of the property. See *In re Smith Estate*, 252 Mich App 120, 127-128; 651 NW2d 153 (2002).

---

[3] MCL 700.1214 provides:

Unless the governing instrument expressly authorizes such a transaction or investment, unless authorized by the court, or except as provided in section 4405 of the banking code of 1999, . . . a fiduciary in the fiduciary's personal capacity shall not engage in a transaction with the estate that the fiduciary represents . . . . A fiduciary in the fiduciary's personal capacity shall not personally derive a profit from the purchase, sale, or transfer of the estate's property. . . .

The RPC also contained a provision prohibiting fiduciaries from "engag[ing] in a transaction . . . with the estate which he represents" without written approval of the court. MCL 700.561. However, the RPC definition of "fiduciary," which governs our interpretation of subsection 561, see MCL 700.2, does not include an attorney in fact.[4] Accordingly, EPIC and the RPC do not restrict respondent's common-law authority to engage in a transaction with decedent, the principal.

In the instant case, the probate court erred as a matter of law in failing to acknowledge that an agent may engage in self-dealing if the principal consents and has knowledge of the details of the transaction. Additionally, the probate court erred as a matter of law by concluding that the passage of time and the change in decedent's mental status affected respondent's authority to transfer the property. The power of attorney that decedent executed was a durable power

---

[4] MCL 700.5 stated:

(1) "Fiduciary" includes a conservator, guardian, personal representative, or a successor fiduciary. Fiduciary includes a testamentary trustee until section 598 applies. Fiduciary includes a plenary guardian or partial guardian . . . .

(2) The following are fiduciaries:

(a) Conservator.

(b) Foreign personal representative.

(c) Guardian.

(d) Personal representative including an independent personal representative.

(e) Trustee, to the extent included in subsection (1).

\*    \*    \*

(4) Whenever the term fiduciary is used in this act, unless otherwise specifically provided, any grant of authority to a fiduciary with respect to property is limited to a fiduciary serving as a personal representative, trustee, or conservator.

of attorney and, therefore, was still valid after decedent became incompetent. MCL 700.5501, 700.5502. Accordingly, if decedent consented to the transaction with knowledge of its details, the timing of the transaction does not prevent its enforcement.[5]

However, we find it necessary to remand this case to the probate court because we cannot discern from the court's findings whether the probate court concluded that decedent freely consented to the transaction. Although the probate court found credible respondent's and her husband's testimony that decedent wanted respondent to have the property, the probate court also found that that respondent acted in a manner "incongruous with an individual who was simply attempting to comply with her mother's wishes." Additionally, the probate court's opinion referenced "changes in circumstances" that prohibited enforcing the transaction. We, however, find no evidence on the record that decedent revoked the power of attorney or changed her mind regarding the disposition of the property after instructing respondent to transfer it. Accordingly, we remand this case to the probate court for application of the foregoing legal principles to the facts of this case as the probate court finds them.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[5] Petitioner argues that that the transfer was invalid because the durable power of attorney did not authorize respondent to make gifts. Because the probate court's opinion does not address this argument, it was not properly preserved for our review. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). Regardless, this argument lacks merit. Respondent's authority to convey property encompassed the authority to convey property as a gift.

SAWYER, J., I concur in the result only.

SCHUETTE, P.J. *(concurring in part and dissenting in part)*. I concur in the majority's decision to reverse and remand this case to the probate court. However, I respectfully dissent regarding the applicability of MCL 700.8101(2)(d) of the Estates and Protected Individual's Code (EPIC), and this Court's ruling in *In re Smith Estate*, 252 Mich App 120; 651 NW2d 153 (2002), to the facts in this case.

The facts of *In re Smith Estate* involved an evidentiary issue of whether a handwritten document was evidence of testamentary intent of the deceased or simply a desire to make a monetary gift in the future. This Court held that a devise under a will was not a vested or an accrued right. As a result, the *Smith* decision did not trigger the limiting provisions of MCL 700.8101(2)(d) regarding the general prohibition against self-dealing as set forth in MCL 700.1214.

Here, I believe that the prohibition against self-dealing (MCL 700.1214) is not superseded by the application of MCL 700.8101(2)(d) because no accrued or vested right exists under the facts and circumstances of this case. *See In re Smith Estate, supra.*

Therefore, on remand, MCL 700.8101(2)(d) should not be applied by the probate court during its review, and MCL 700.1214 should be applied to the facts of this case.