# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES W. RUSTER,

       Plaintiff-Appellant,

v

MICHAEL K. KOON,

       Defendant-Appellee.

UNPUBLISHED
February 28, 2017

No. 330328
Antrim Circuit Court
LC No. 2015-008977-CH

Before: HOEKSTRA, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

In this dispute involving a land contract, plaintiff appeals the trial court's order that granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). For the reasons provided below, we affirm.

Plaintiff owned real property consisting of 120 acres in Antrim County, the majority of which was wooded. In February 2014, the Antrim Circuit Court sentenced defendant to serve a 14-month minimum prison sentence for selling adulterated cider. On that same day, defendant, through his attorney, executed a written durable power of attorney which appointed defendant as his attorney in fact. Before this dispute, plaintiff and defendant enjoyed a close relationship. On February 22, 2014, defendant executed an instrument in which he acknowledged his duties under the aforementioned durable power of attorney, which included, *inter alia*, the power to dispose of plaintiff's real estate. At the direction of plaintiff, communicated through plaintiff's attorney, defendant thereafter listed the property with a real estate agent for the price of $264,000.

Two parties were interested in purchasing the property and submitted offers to defendant. The first prospective buyer offered to buy the property and all mineral rights for $228,000 cash on February 28, 2014. On the same day, defendant made a counteroffer, which included only 50% of the mineral rights and a selling price of $252,000 cash. It was not accepted.

The second prospective buyer, Rubingh, offered to purchase the property for $240,000 cash, which amounted to $2,000 per acre, on March 10, 2014. Rubingh also proposed that plaintiff would transfer 100% of the mineral rights to him over a five-year period commencing at the time of closing.

Due to the conditions of plaintiff's incarceration, defendant was not able to communicate these offers directly to plaintiff. Instead, defendant informed plaintiff's attorney of these offers.

-1-

However, plaintiff claims that defendant did not inform his attorney that the Rubingh offer was for $2,000 per acre. Plaintiff's attorney apparently communicated to plaintiff that defendant had received two offers for the property, with the highest being for $1,900 per acre. Plaintiff rejected both offers.

Thereafter, defendant communicated with plaintiff through his attorney that he desired to purchase the property. Plaintiff then communicated to his attorney, and through his attorney to defendant, that he would be willing to sell the property to defendant for $2,200 per acre through a land contract under which defendant would pay five percent interest for 15 years and would pay the balance at the end of that 15-year period. The record shows that plaintiff sent multiple letters to defendant during the time of negotiations. In these letters, plaintiff repeatedly informed defendant that he was worried that Rubingh was after his land, that he did not want Rubingh to have the land, and that defendant needed to do whatever it took for defendant to purchase the property and prevent Rubingh from doing so.

Defendant thereafter negotiated with plaintiff through his lawyer, eventually making a proposal to plaintiff to purchase the property for $240,000, amounting to $2,000 per acre, on a 15-year land contract under which defendant would pay $40,000 down and interest of one percent for the first five years, two percent for the next five years, and then three percent for the remaining five years. At the end of this 15-year period, defendant would pay plaintiff the remaining $200,000. Defendant also included a right to harvest trees from the property in this proposal.

Defendant thereafter secured a commitment from a short-term lender to loan him the $40,000 down payment on his promise that he would repay within 11 days of the closing on the land contract. Defendant also contacted a lumber company, Maple Ridge Hardwood, which offered to pay defendant $75,000 within 10 days of the closing for the right to harvest a number of trees from the property.

Plaintiff's attorney then mailed plaintiff a purchase agreement, an addendum to that purchase agreement, and a cover letter stating the relevant terms of each. The cover letter states that, under the purchase agreement "[defendant] can harvest any trees without your input." The purchase agreement contains the terms of defendant's proposal and the addendum to the purchase agreement states in pertinent part:

> The Buyer and the Seller wish to and do hereby amend and/or supplement the terms of the Purchase Agreement to hereafter further and additionally provide as follows:
>
> 1. The land contract contemplated within the Purchase Agreement (the "Land Contract"), shall provide to the Buyer the right to timber the Real Estate during the term of the Land Contract and the right to construct any buildings necessary for the production of maple syrup.
>
> * * *
>
> 6. On or about February 19, 2014, Ruster executed a certain "Durable Power of Attorney Effective on Execution" (the "Power of Attorney"),

-2-

whereunder Koon was designated as the attorney-in-fact and agent with authority to act on behalf of Ruster. Irrespective of the fact that Koon is purchasing the Real Estate on Land Contract from Ruster, Ruster wishes to have Koon act on his behalf, pursuant to the Power of Attorney, to effect the sale of the Real Estate from Ruster to Koon in accordance with the terms of the Purchase Agreement and this Addendum thereto. Ruster thus ratifies all terms and conditions of the Power of Attorney in such regards and authorizes Koon to execute, on behalf of Ruster, any and all documents which are necessary and appropriate to effect the contemplated sale of the Real Estate from Ruster as the Seller, to Koon as the Buyer.

Plaintiff executed these documents on April 10, 2014. Thereafter, defendant executed, on behalf of himself and plaintiff, a land contract and addendum to the land contract, both of which plaintiff's attorney or his firm had drafted.

The land contract and its addendum provide for the same basic terms as outlined in the purchase agreement and its addendum. Moreover, the land contract provides, in pertinent part:

**2.** *Purchaser Agrees:*

* * *

(d) To keep and maintain the land and the buildings in as good condition as they are at the date hereof and not commit waste upon, within or to the land or its appurtenances or improvements, nor remove or demolish any improvements thereon, nor otherwise diminish the value of Seller's security, without the written consent of Seller

* * *

**3.** *Seller and Purchaser Mutually Agree:*

* * *

(g) That should Purchaser fail to perform this Contract or any part thereof, Seller immediately after such default shall have the right to declare this contract forfeited and void, and retain whatever may have been paid hereon, and all improvements that may have been made upon the land, together with additions and accretions thereto, and consider and treat Purchaser as his tenant holding over without permission and may take immediate possession of the land, and remove and put out Purchaser and each and every other occupant. A proper notice of forfeiture, giving Purchaser fifteen (15) days to pay any moneys required to be paid hereunder or to cure other material breaches of this Contract, shall be served on Purchaser, as provided by statute, before institution of any proceedings to recover possession of the land.

(h) That if written demand for payment of the full outstanding balance is made upon Purchaser, after Purchaser shall have been in default for a period of

forty-five (45) days or more, the entire amount owing heron shall then be due and payable forthwith, anything herein contained to the contrary notwithstanding.

(i) That in the event that Purchaser should default upon its obligations hereunder, Purchaser shall be obligated to pay to Seller all costs and expenses which Seller incurs to enforce his rights hereunder, including but not limited to Seller's reasonable attorney fees.

The addendum to the land contract contains substantially the same terms as the addendum to the purchase agreement, those pertinent to the instant dispute being the following:

2.  Purchaser shall have the right to timber the Real Estate during the term of the Land Contract and the right to construct any buildings necessary for the production of maple syrup.

* * *

5.  As indicated in the opening paragraph of this Addendum, on February 19, 2014, James W. Ruster . . . executed a certain "Durable Power of Attorney Effective on Execution" . . . whereunder Ruster designated Michael K. Koon . . . as his attorney-in-fact and agent with authority to act on behalf of Ruster. Ruster thereafter executed a certain Purchase Agreement and Addendum to Purchase Agreement on April 10, 2014, whereunder Ruster ratified all terms and conditions of the Power of Attorney and authorized Koon to execute, on behalf of Ruster, any and all documents which are necessary and appropriate to effect the sale of the Real Estate via the present Land Contract, from Ruster as the "Seller" to Koon as the "Purchaser."

6.  The Land Contract shall be deemed to be amended and/or supplemented in all pertinent respects, so as to be consonant with the terms of this Addendum. The Land Contract and this Addendum thereto constitute the entire understanding and agreement of Seller and Purchaser with respect to the matters addressed therein and herein, the terms of which may not be amended or modified without the express written consent of the parties hereto.

After executing these documents, the lumber company provided defendant with a $75,000 payment, a portion of which defendant used to repay the short-term loan. The lumber company thereafter removed a number of trees from the property. Plaintiff became aware of the harvest sometime after his release from prison. Plaintiff then rescinded defendant's power of attorney and, after unsuccessfully attempting to negotiate an additional sum from defendant, brought the instant action.

Plaintiff's suit sought to "foreclose" on the land contract under the theory that defendant's harvest of trees from the property constituted waste under the land contract. Alternatively, plaintiff sought to rescind the land contract on the basis that defendant breached his fiduciary duties as plaintiff's agent or committed fraud or an innocent misrepresentation when he failed to disclose the terms of the Rubingh and lumber company offers to plaintiff.

-4-

Defendant responded, in pertinent part, by moving for summary disposition under MCR 2.116(C)(10) and sought sanctions for the filing of a frivolous lawsuit.

Defendant averred that defendant's explicit right to harvest trees from the land under the land contract and its addendum, and the purchase agreement and its addendum, barred plaintiff's requests for foreclosure and his claim of waste. Defendant further averred that plaintiff's claims for rescission based on silent fraud, misrepresentation, and breach of fiduciary duty were barred because defendant had a right to timber under the contract and also because plaintiff's attorney disclosed to plaintiff the terms of the Rubingh offer as well as defendant's superior offer.

The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10) and stated the following:

> Succinctly stated, the Plaintiff was in prison and represented by competent, independent counsel when he chose to sell the property at issue to the unrepresented Defendant. The Defendant also had a Power of Attorney for the Plaintiff.

> While the Plaintiff has raised arguments from fraud to waste to a violation of EPIC, it is evident that these arguments are factually frivolous. Plaintiff's attorney drafted all of the relevant documents. The Plaintiff was advised by his attorney that the purchase agreement would allow the Defendant "to harvest any trees without your input." The claim that the Defendant committed waste by harvesting trees is frivolous.

> Similarly, the Plaintiff was well aware that the Defendant had his Power of Attorney and was acting in a fiduciary capacity. Through his independent counsel, Plaintiff provided consent to the sale and waived any violation of EPIC.

> It is also evident that the Plaintiff was aware of an alternative offer. Plaintiff expressly chose not to sell his property to that individual and favored the Defendant who he looked at with great fondness.

> Upon his release from prison, the Plaintiff apparently experienced seller's remorse regarding the disposition of his real estate and filed this lawsuit.

> This is not a case where an unscrupulous individual armed with a power of attorney took advantage of an individual confined in prison. Quite to the contrary. The Plaintiff was independently represented by competent counsel who drafted all of the documents, advised Plaintiff of the timber harvesting provision, obtained consent for a sale to the Defendant while acting in a fiduciary capacity and then served as a conduit between Plaintiff and Defendant with regard to the rejection of the alternative offer.

On appeal, plaintiff avers that the trial court improperly dismissed his breach of fiduciary duty claims because the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, prevents an agent from purchasing the estate he represents and from otherwise profiting from that estate's sale. Plaintiff also argues that the trial court improperly dismissed his claims for

silent fraud or innocent misrepresentation because defendant had a duty to inform plaintiff of the terms of the Rubingh offer as well as the lumber proposal. Additionally, plaintiff contends that the trial court improperly dismissed his claims for waste and foreclosure of the land contract because the land contract and its addendum did not grant defendant the right to harvest lumber from the property.

## I. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court considers " 'the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party.' " *Sallie v Fifth Third Bank*, 297 Mich App 115, 117-118; 824 NW2d 238 (2012), quoting *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). The motion is properly granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Latham*, 480 Mich at 111.

## II. PLAINTIFF'S FIDUCIARY DUTIES

"It is well established that powers of attorney are to be construed in accordance with the principles governing the law of agency." *In re Susser Estate*, 254 Mich App 232, 234-235; 657 NW2d 147 (2002) (quotation marks and citation omitted). As an agent of the principle, the entity acting under a power of attorney has "the duty not to compete with the principal on his own account or for another in matters relating to the subject matter of the agency, and the duty to deal fairly with the principal in all transactions between them.' " *Id.* at 235 (quotation marks and citation omitted).

"Common-law agency principles, which generally apply to powers of attorney, permit an agent to personally engage in a transaction with the principle with consent of the principal after a full disclosure of the details of the transaction." *In re Estate of Cummin*, 258 Mich App 402, 407-408; 671 NW2d 165 (2003). MCL 700.1214 of EPIC imposes stricter restrictions on a fiduciary who engages in a transaction with the estate he or she represents and states as follows:

> Unless the governing instrument expressly authorizes such a transaction . . . , a fiduciary in the fiduciary's personal capacity shall not engage in a transaction with the estate that the fiduciary represents . . . . A fiduciary in the fiduciary's personal capacity shall not personally derive a profit from the purchase, sale, or transfer of the estate's property. . . .

Plaintiff claims that this Court should hold defendant to the stricter provisions of EPIC. Because we conclude that defendant violated neither the common law of agency nor the stricter standard set forth in MCL 700.1214, we need not determine whether EPIC actually applies to the unique factual circumstances of this case.

Plaintiff was aware of the other two purchase offers either personally or through his attorney. See *Saltmarsh v Burnard*, 151 Mich App 476, 491-492; 391 NW2d 382 (1986) (knowledge of an attorney is ordinarily imputed to the client). On at least two occasions, plaintiff told defendant that he did not want Rubingh to have his land. On what appears to be the

-6-

later occasion, plaintiff told defendant that they needed to "do whatever it takes for [defendant] to have" the property. Defendant apparently did so by procuring a short-term loan and a commitment from a lumber company that would enable him to repay that loan. Defendant informed plaintiff's attorney of his desire to harvest lumber from the property and plaintiff's attorney specifically informed plaintiff that the purchase agreement would allow defendant to "harvest any trees without [plaintiff's] input." Plaintiff's attorney also informed plaintiff of all the salient financial details of the transaction. Plaintiff thereafter executed a purchase agreement with these terms and an addendum to the purchase agreement. The addendum explicitly states that it amended the purchase agreement to provide defendant with the right to timber the land and that plaintiff "ratifies all terms and conditions of the Power of Attorney in such regards and authorizes Koon to execute, on behalf of Ruster, any and all documents which are necessary and appropriate to effect the contemplated sale of the Real Estate from Ruster as the Seller, to Koon as the Buyer."

Plaintiff was not only fully informed of the details of the transaction, but specifically amended the power of attorney to allow defendant to execute the sale. Accordingly, the sale itself does not run afoul of either the common law of agency or EPIC.

Plaintiff makes much of the fact that defendant was informed of Maple Ridge's offer to harvest timber from the property for $75,000 before plaintiff executed the purchase agreement, but failed to inform plaintiff or his attorney of the offer. Ordinarily, an agent is required to "disclose fully and fairly the material terms of any offers" to the principal. *Andrie v Chrystal-Anderson & Assocs Realtors, Inc*, 187 Mich App 333, 335; 466 NW2d 393 (1991). However, under the unique circumstances in this case, we find that, even if defendant failed to disclose this information, defendant did not breach his fiduciary duties to plaintiff.

Plaintiff's letters indicate that he was knowledgeable about tapping trees for syrup production; his conviction indicates that he held at least a basic understanding of harvesting apples for cider production; and his claims on appeal indicate that he is familiar with the production of firewood from trees. Given this wide knowledge of the uses of the trees on the property, we find untenable the claim that plaintiff was unaware of the lumber value of the trees. Therefore, that plaintiff specifically instructed defendant to sell the real estate rather than pursue other means to raise capital while he was in prison indicates that he would not have seized upon this opportunity even if defendant had presented it to him. Moreover, there is no evidence that Maple Ridge would have offered plaintiff the same deal it offered defendant. In fact, Maple Ridge's standard practice was to purchase timber on a three-year contract, providing ten percent down payment to the seller with full payment due when Maple Ridge actually harvested the lumber. Maple Ridge departed from this practice in this case only so that defendant could procure the property. Thus, there is no reason to believe that Maple Ridge would have departed from their practice to purchase the lumber from plaintiff, who as its owner, already had the ability to dispose of it as he wished. Therefore, plaintiff could have only expected a guaranteed payment of $7,500 in the short term, which would likely have been insufficient to cover his expenses while in prison, including the restitution owed to his victims and his attorney fees. Accordingly, because plaintiff would not have been able to seize upon the offer at the time it was made, and, acknowledging that plaintiff instructed defendant to do whatever it took to effectuate the sale of the property to himself, we hold that defendant did not breach his fiduciary duties

when he failed to disclose the lumber offer to plaintiff and that the trial court properly granted summary disposition in defendant's favor on this count.

Plaintiff additionally challenges the trial court's dismissal of his claims of silent fraud and innocent misrepresentation. Again, we conclude that the trial court's dismissal of these claims was proper.

"A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation." *M&D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998). A party claiming silent fraud must prove that a person with a duty to disclose made a false or misleading representation. *Id.* at 28-29.

Plaintiff specifically instructed defendant to sell his real property. For the reasons previously discussed, plaintiff's alleged failure to tell plaintiff of Maple Ridge's offer is not actionable. Because there is no evidence that Maple Ridge's offer would have been made to plaintiff, nor evidence that plaintiff would have acted upon it, this claim is unpersuasive. Additionally, although now plaintiff claims that he would have accepted the Rubingh offer had he known it was a cash offer and that plaintiff was planning on harvesting lumber from the land, plaintiff previously and explicitly stated that he did not want Rubingh to have his land. Indeed, when presented with Rubingh's offer to purchase the land at $1,900 per acre, if plaintiff was willing to sell to Rubingh and thought $2,000 per acre was a fair price, common sense dictates that he would have instructed defendant to make a counteroffer from the purported $1,900 per acre offer. Notably, plaintiff instead advised defendant to do whatever he needed to do to purchase the property himself.

Accordingly, assuming a question of fact exists with respect to whether defendant misrepresented the $2,000 per acre offer as a $1,900 per acre offer, the record indicates that the misrepresentation did not affect plaintiff's decision to sell to defendant because plaintiff clearly and unmistakably did not want the property to end up with Rubingh. Accordingly, the trial court properly awarded summary disposition in defendant's favor under MCR 2.116(C)(10).

### III. WASTE

Plaintiff additionally challenges the trial court's interpretation of the waste provision in paragraph 2(d) of the land contract as well as its interpretation of the timber provision in paragraph 2 of the land contract addendum. We find that the trial court properly interpreted these sections.

"The proper interpretation of a contract is a question of law, which this Court reviews de novo." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). "A contract must be interpreted according to its plain and ordinary meaning. When the language of the contract is clear and unambiguous, interpretation is limited to the actual words used, and an unambiguous contract must be enforced according to its terms." *Ajax Paving Indus, Inc v Vanopdenbosch Const Co*, 289 Mich App 639, 644; 797 NW2d 704 (2010) (citations omitted). Therefore, "[w]here a contract is to be construed by its terms alone, it is the duty of the court to interpret it." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003)

(quotation marks and citation omitted). However, "[i]t is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Id*. A contract is ambiguous when its provisions are capable of conflicting interpretations. *Id.* at 463. However, "[i]f a contract, even though inartfully worded or clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous." *South Macomb Disposal Auth v Mich Mun Risk Mgmt Auth*, 207 Mich App 475, 478; 526 NW2d 3 (1994).

At issue is the following provision in the land contract addendum:

Purchaser shall have the right *to timber the Real Estate* during the term of the Land Contract and the right to construct any buildings necessary for the production of maple syrup. [Emphasis added.]

At the outset, we reject plaintiff's view that, assuming a conflict exists between the land contract and the land contract addendum, the terms of the earlier-in-time land contract prevails. Under this theory, no contract could ever be substantially modified by a subsequent document because any resulting conflict would simply be resolved in favor of the original contract. Plaintiff's reliance on *Klever v Klever*, 333 Mich 179, 189; 52 NW2d 653 (1952), is misplaced, as that opinion merely states that one rule of construction allows that when there are two conflicting provisions *within the same document*, then the first can be deemed to be controlling. Here, it is not one instrument or document at issue, but, rather, an original contract and a separate addendum.

Plaintiff argues that the verb "timber" refers only to a right to remove "dead or diseased trees for firewood, or the harvesting of a few trees for repairs or construction of improvements on the property itself." Defendant argues that the term grants him an unlimited right to harvest any and all trees from the property. The trial court suggested, but did not decide, that the term allowed defendant the right to reasonably harvest trees from the land for lumber purposes, but did not grant defendant an unlimited right to do so. The trial court ultimately determined that defendant's removal of the trees was reasonable under the authority granted him under the contract and therefore did not constitute waste.

We conclude that the use of the verb "timber" is not ambiguous. While many of the dictionary definitions of the verb "timber" are irrelevant, there is one that is appropriate: as an intransitive verb, "to fell timber." *Random House Webster's College Dictionary* (1997). And the noun "timber" simply refers to "the wood of growing trees" or the "growing trees themselves." *Id.* Therefore, the clear meaning of the verb phrase "to timber" in the contract is simply to cut down trees. Plaintiff's attempt to limit such "timbering" to dead or diseased trees or to only a few trees for a particular purpose is not supported by the broad language of the contract. Hence, defendant had a right to timber or harvest the trees on the property. Indeed, plaintiff fully understood this to be the meaning of the contract as well when his attorney, the one who drafted the document, informed him that defendant had the power to "harvest any trees without your input."

Plaintiff claims that the trial court was required to construe and constrain the addendum with the waste provision set forth in the preceding land contract. However, the addendum specifically states that "[t]he Land Contract shall be deemed to be amended and/or supplemented

in all pertinent respects, so as to be consonant with the terms of this Addendum." That the addendum specifically states that it amended the land contract precludes this Court, as it did the trial court, from determining that the waste provision in the land contract prevented the defendant from exercising his express right under the addendum to harvest trees from the property.[1]

We therefore hold that the trial court properly dismissed plaintiff's claim of waste. Because plaintiff's request to foreclose on the land contract was predicated upon his argument that defendant committed waste, we hold that the trial court properly dismissed this claim.

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ Michael J. Riordan

---

[1] Moreover, to the extent that the addendum could be viewed as conflicting with the general waste provision, the more specific term allowing the harvesting prevails. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367 n 22; 817 NW2d 504 (2012); 11 Williston, Contracts (4th ed), § 32:10, pp 739-740 ("When general and specific clauses conflict, the specific clause governs the meaning of the contract.").