*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF VERNON STEPHENSON.

| | |
|---|---|
| CHRISTINA SMITH, G. SCOTT SMITH, and STEPHEN SMITH, | UNPUBLISHED<br>July 30, 2020 |
| Appellees/Cross-Appellants, | |
| v | No. 348207<br>Genesee Probate Court |
| RANDAL STEPHENSON, Personal Representative of the ESTATE OF VERNON STEPHENSON, | LC No. 15-202160-DE |
| Appellant/Cross-Appellee. | |

*In re* STEPHENSON FAMILY TRUST.

| | |
|---|---|
| CHRISTINA SMITH, G. SCOTT SMITH, and STEPHEN SMITH, | |
| Appellees/Cross-Appellants, | |
| v | No. 348210<br>Genesee Probate Court |
| RANDAL STEPHENSON, Successor Trustee of the STEPHENSON FAMILY TRUST, | LC No. 17-208550-TV |
| Appellant/Cross-Appellee. | |

Before: METER, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

-1-

In these consolidated cases,[1] respondent, Randall Stephenson, appeals by right the probate court's order granting partial summary disposition to petitioners, Christina Smith, G. Scott Smith, and Stephen Smith. In a cross-appeal, petitioners appeal the probate court's holding that respondent was authorized under the terms of the Stephenson Family Revocable Living Trust (the Trust) and/or the durable power of attorney for Vernon Stephenson to make limited gifts and disbursements to himself and his children. This appeal has been decided without oral argument pursuant to MCR 7.214(E). We affirm in part and reverse in part.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent and Christina are siblings, and Scott and Stephen are Christina's children. Vernon and Kathleen Stephenson (together, the decedents) were respondent and Christina's parents. Respondent's children are Gabriella and Miles Stephenson. In 2010, the decedents created the Trust and dual durable powers of attorney in which each spouse nominated the other to serve as primary attorney-in-fact with respondent to serve as the first alternate. The Trust designated the decedents to be primary trustees and beneficiaries, with respondent to serve as successor trustee upon the decedents' incapacitation or death. Respondent, his children, and petitioners were other named beneficiaries.

Kathleen died on March 6, 2014. On March 14 and 25, 2014, two doctors declared Vernon to be incompetent and unable to perform his trustee duties. Respondent accordingly assumed his role as both successor trustee and the holder of Vernon's power of attorney. Vernon died on April 6, 2015. After Vernon's declared incompetency in March 2014, respondent made substantial distributions from the Trust and Vernon's estate amounting to approximately $147,000 to pay his children's educational expenses and $56,000 to himself.[2] A later accounting of the Trust's assets showed that after these distributions, approximately $700 remained.

Petitioners brought this action alleging that respondent violated his fiduciary duties and the Trust's terms by improperly self-dealing and exhausting the Trust's assets to their detriment as beneficiaries. Petitioners also contended that respondent failed to include in the Trust's assets a "Demand Promissory Note" (the Note) that was created in 2009 and in which respondent and his wife agreed to repay with interest a $120,000 loan from the decedents. The Note provided that the entire amount was repayable upon the decedents' demand at any time.[3]

Respondent defended his actions under the Trust's and power of attorney's terms, maintaining that he was given unbridled discretion to distribute the Trust's assets and that

---

[1] *In re Stephenson Estate*, unpublished order of the Court of Appeals, entered April 3, 2019 (Docket No. 348207); *In re Stephenson Family Trust*, unpublished order of the Court of Appeals, entered April 3, 2019 (Docket No. 348210).

[2] The probate court never determined the source of these payments, meaning it is unknown whether they were drawn from the Trust or Vernon's separate assets.

[3] Petitioners raised other claims in the probate court, but those claims were not the subject of the motion for partial summary disposition and are therefore not discussed in this appeal.

petitioners had no right to a distribution. He also contended that the Note was forgiven by Kathleen and therefore was not an asset of the Trust or Vernon's estate.

Both parties moved for partial summary disposition, and the probate court granted partial summary disposition in petitioners' favor. The probate court held that respondent was authorized under the power of attorney and the Trust to make distributions to himself and his children, but his authority to do so was limited to gifts "that will qualify for exclusion under the Internal Revenue Code." It further held that the Note had not been discharged.

Both parties appeal. Respondent challenges both of the probate court's determinations, while petitioners challenge the probate court's ruling that respondent had authority to make gifts or disbursements under the power of attorney and the Trust, contending that respondent had no authority to make any disbursements or gifts, however limited, to himself or his children.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

A motion is properly granted pursuant to MCR 2.116(C)(10) when "there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). This Court "must examine the documentary evidence presented and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Id*. at 415-416.

This Court reviews de novo both the probate court's interpretation of a trust, *In re Theodora Nickels Herbert Trust*, 303 Mich App 456, 458; 844 NW2d 163 (2013), and its interpretation of a contract, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

### B. POWER TO MAKE GIFTS

We reject petitioners' argument that respondent was prohibited from making gifts to himself or his children under Vernon's power of attorney or the Trust.

First addressing respondent's authority under Vernon's power of attorney, it is well established that "[a] power of attorney provides the agent with all the rights and responsibilities of the principal as outlined in the agreement." *In re Capuzzi Estate*, 470 Mich 399, 402; 684 NW2d 677 (2004). A power of attorney must be "strictly construed and cannot be enlarged by construction." *Park v Appeal Bd of Mich Employment Security Comm*, 355 Mich 103, 135; 94 NW2d 407 (1959).

Vernon's power of attorney contains a gift-giving provision empowering the attorney-in-fact to "make gifts to third parties or to the agent(s) as individual(s), as the agent(s), in the sole discretion of the agent, deem appropriate, provided said gifts qualify for the annual exclusion under Sections 2503(b), 2503(c) or 2503(e) of the Internal Revenue Code of 1986, including amendments thereto." This power of attorney clearly gave respondent, as the attorney-in-fact, the authority to

make limited gifts, including limited gifts to himself. Petitioners do not dispute this. Instead, they contend that Michigan law nonetheless prohibited respondent from self-dealing.

Petitioners argue that the outcome of this case should be controlled by *In re Cummin Estate*, 258 Mich App 402; 671 NW2d 165 (2003), or *In re Cummin Estate*, 474 Mich 1117; 712 NW2d 447 (2006), but neither case compels us to conclude that respondent did not have the authority under Vernon's power of attorney to make gifts to himself or his children. Unlike the case before us, the power of attorney in *Cummin* did not explicitly allow the attorney-in-fact to self-deal, so the courts relied on the common-law rule that an agent may engage in self-dealing if the principal consents and has knowledge of the details of the transaction. See *In re Cummin Estate*, 258 Mich App at 409; *In re Cummin Estate*, 474 Mich at 1117. The power of attorney in the present case explicitly empowered respondent to self-deal in the gift-giving provision. This provision must be strictly construed and cannot be expanded or limited. *Park*, 355 Mich at 135. Accordingly, respondent had the authority under the power of attorney to make limited gifts, including gifts to himself.

Turning to the Trust, we conclude that the terms of the Trust gave respondent the authority to make disbursements and limited gifts to himself and his children. The goal in a trust's interpretation is to "ascertain and abide by the intent of the settlor," and a court does this by looking to the trust's language. *In re Miller Osborne Perry Trust*, 299 Mich App 525, 530; 831 NW2d 251 (2013). The same rules of construction that apply to the terms of a will also apply when appropriate to the terms of a trust, MCL 700.7112, so a trust must be read in its entirety and, if possible, with harmony among its provisions, *In re Raymond Estate*, 483 Mich 48, 52; 764 NW2d 1 (2009).

Article Four, Section D of the Trust states:

D. **INCAPACITY OF THE SURVIVING TRUSTMAKER OR BOTH TRUSTMAKER(S):**

> If the surviving Trustmaker or both of us are replaced as trustee(s) of this trust as provided above, the successor trustee(s) shall use the trust estate for our benefit and for the benefit of anyone else authorized by Article One or Two of this living trust. Any income not paid to or for our benefit or to or for the benefit of other authorized beneficiaries shall be added to the principal.

> The foregoing shall also apply to distributions by the trustee(s) whenever the surviving Trustmaker or both of us who are not serving as trustee(s) become incapacitated.

The statement "anyone else authorized by Article One or Two" is a reference to any of the beneficiaries of the Trust. Thus, this provision clearly authorized respondent, as successor trustee, to make distributions from the Trust's assets for his benefit or the benefit of his children, all of whom are beneficiaries of the Trust.

Article Four, Section G of the Trust provides:

G. **GIFTING AND LOANS:**

If the surviving Trustmaker or both of us are replaced as trustee(s) of this trust as provided above, the successor trustee(s) shall be fully authorized to make gifts from this trust to third parties or to the successor trustee(s) as individual(s) as determined in the sole discretion of the successor trustee(s), provided said gifts qualify for the annual exclusion under Sections 2503(b), 2503(c) and 2503(e) of the Internal Revenue Code of 1986, as subsequently amended.

Additionally, if the Trustmakers keep a record of specific loans to beneficiaries made during the Trustmakers' lifetimes, and desire that said loans be considered advances against inheritance, the Trustmakers will attach a list so stating, and hereby direct the successor trustee(s) to deduct the loan amounts from each respective share that the named beneficiary would have received. Further, Trustmakers hereby forgive any loans that exceed any beneficiary's share of trust proceeds.

This section clearly authorized respondent, as successor trustee, to make gifts to himself and third parties, like his children.[4] But like the gift-giving authority under the power of attorney, respondent could only give limited gifts under Article Four, Section G of the Trust.

Petitioners do not appear to contest that Article Four, Sections D and G, standing alone, grant respondent the authority to make disbursements and gifts. Instead, they argue that when these sections are read in conjunction with other provisions in the Trust, Article Four, Sections D and G become ambiguous, and the court must look to extrinsic evidence to determine their meanings. We disagree.

In support of their argument, petitioners first point to Article One, Section C's instruction that "[e]xcept as otherwise specified within the provisions of this Declaration of Trust, in the event of the incompetency of both of us or the survivor of us, our successor trustee is to use the income and assets of this trust exclusively for the health, education, support, and maintenance of both of us or the survivor of us." This provision does not create an ambiguity when read in conjunction with Article Four, Sections D and G because it explicitly states that it applies *except* as otherwise provided elsewhere in the Trust.

Petitioner's next argue that Article One, Section J creates an ambiguity when read in combination with Article Four, Sections D and G. Article One, Section J states that the decedents "will have the exclusive right to the use and benefit of the income and assets of this trust" as long as they are alive. While it is a closer question of whether Article One, Section J creates an ambiguity in the Trust, we conclude that it does not. Petitioner is contending that Article One, Section J creates a patent ambiguity, which "exists if an uncertainty concerning the meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible

---

[4] We note that Article Four, Section D addressed using the Trust for the beneficiaries' *benefit*, whereas Article Four, Section G addressed limited *gifts* to the successor trustee and third parties regardless of the benefit, which allows these provisions to be read harmoniously with each other.

language." *In re Woodworth Trust*, 196 Mich App 326, 328; 492 NW2d 818 (1992). Article Four, Sections D and G are clearly intended to apply in the event that the Trustees become incapacitated. There is nothing "defective, obscure, or insensible" about the language used in those provisions. *Id.* Likewise, there is nothing "defective, obscure, or insensible" about the language used in Article One, Section J, *id.*, and that provision is clear that the Trust is created for the use and benefit of the Trustees (the decedents) as long as they are alive. Though Article One, Section J of the Trust does not state an exception to its terms if the Trustees become incapacitated, we must read the trust as a whole and, if possible, harmonize the provisions to reflect the intent of the decedents. See *In re Estate of Raymond*, 483 Mich at 52. When reading the Trust as a whole, it is clear that the decedents' intent was for them to retain exclusive control except in the event that they became incapacitated. We therefore conclude that there is no patent ambiguity in the Trust.

## C. DISCRETIONARY TRUST

Turning to respondent's appeal, we agree that the probate court erred by determining that his power to make distributions under Article Four, Section D was limited by his ability to make gifts under Article Four, Section G. However, we do not agree that respondent's discretion was unfettered—Michigan law places limitations and safeguards on a trustee-beneficiary's handling of a trust. There are factual determinations that prevent us from definitively ruling on this issue, so we remand for the probate court to make the required findings to ultimately resolve the issues.

"Under a discretionary trust, the trustee may pay to the beneficiary as much of the income or principal as the trustee in his discretion determines to be appropriate." *In re Johannes Trust*, 191 Mich App 514, 517; 479 NW2d 25 (1991). But that discretion is not unlimited. While the terms of a trust generally control over a statute, the terms of the trust do not prevail over "the duty of a trustee to administer a trust in accordance with section 7801." MCL 700.7105(2)(b).[5] That section states that "the trustee shall administer the trust in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the trust beneficiaries, and in accordance with this article." MCL 700.7801. Besides these restrictions, the exercise of any power by a trustee, whether conferred on the trustee by statute or by the terms of the trust, is subject to the fiduciary duties prescribed in the Michigan Trust Code, MCL 700.7101 *et seq*. MCL 700.7816(2).

Further, MCL 700.7815 addresses discretionary trusts, and it provides in relevant part:

> (1) A beneficiary of a discretionary trust provision as described in [MCL 700.7505[6]] has no property right in a trust interest that is subject to a discretionary trust provision, and has no right to any amount of trust income or principal that may be distributed only in the exercise of the trustee's discretion. *However*, except as provided in subsection (2) and *notwithstanding the breadth of discretion granted to a trustee in the terms of the trust*, including the use of such terms as "absolute",

---

[5] By its terms, this statutory provision does not apply "as otherwise provided in [MCL 700.7703a] and [MCL 700.7703b]," MCL 700.7105(2)(b), but those sections do not apply to this case.

[6] MCL 700.7505 does not apply to this case.

"sole", or "uncontrolled", *a trustee abuses the trustee's discretion* in exercising or failing to exercise a discretionary power if the trustee does any of the following:

(a) Acts dishonestly.

(b) Acts with an improper motive, even though not a dishonest motive.

(c) Fails to exercise the trustee's judgment in accordance with the terms and purposes of the trust.

\* \* \*

(3) Subject to subsection (5),[7] the following rules apply to a trustee's exercise of a power *unless* the terms of the trust *expressly indicate that the rule does not apply*:

(a) A person *other than a settlor who is a trust beneficiary and trustee of a trust* that confers on the trustee a power to make distributions pursuant to a discretionary trust provision to or for the trustee's benefit *may exercise the power only in accordance with an ascertainable standard*. [MCL 700.7815(1)-(3) (emphasis added).]

MCL 700.7103(b) defines an ascertainable standard to be "a standard relating to an individual's health, education, support, or maintenance within the meaning of section 2041(b)(1)(A) or 2514(c)(1) of the internal revenue code of 1986, 26 USC 2041 and 2514."

Respondent contends that he had unbridled discretion to distribute the Trust assets according to the Trust's plain, unambiguous terms. While we agree that that Article Four, Section D unambiguously empowers respondent to distribute the Trust's assets for the beneficiaries' benefit within his discretion, we disagree that this discretion is unfettered and without limitation. Michigan law clearly places restrictions upon a trustee exercising his or her judgment under a discretionary trust, especially in circumstances in which the trustee is also a beneficiary. See MCL 700.7815. The probate court, however, erred by determining that the gift-giving provision of Article Four, Section G controlled over Article Four, Section D. Article Four, Section G, by its terms, applied only to *gifts* made to respondent or third parties, whereas Article Four, Section D permitted respondent to use his discretion when distributing Trust assets for the *benefit* of the beneficiaries, which included himself and his children.[8]

On the basis of the record before us, we are unable to determine whether respondent's exercise of his discretion as permitted by the terms of the Trust violated Michigan law. The parties dispute numerous facts that have not yet been decided, including whether the decedents instructed

---

[7] Subsection (5) is not applicable.

[8] For clarity, we note that the restrictions under Michigan law on respondent's discretion as successor trustee apply to both his discretion to make distributions under Article Four, Section D and his discretion to make gifts under Article Four, Section G.

respondent to use the Trust money to pay for his children's education. Relatedly, the parties have evidentiary concerns regarding whether such evidence is admissible. The trial court needs to address and resolve these issues before this Court can address them in an appeal.

Moreover, the source of respondent's payments to himself and to his children is unknown because the probate court declined to make this determination at this point in the proceedings. It is not known, therefore, if the payments were taken from Vernon's separate assets or the Trust's assets or a combination of both. To the extent that any payments came from Vernon's separate assets, these would fall under the power of attorney and be limited to the exclusions stated therein. To the extent that any payments came from the Trust's assets, these would fall under Article Four, Sections D and G and the additional restrictions under Michigan law. The probate court must address these factual issues on remand as well.

### D. THE NOTE

Respondent challenges the probate court's determination that the Note was not discharged. Although the probate court erred by determining that the Note was a negotiable instrument, it nonetheless correctly determined that the Note was not discharged.

As relevant here, MCL 440.3104(4) states, "A promise or order other than a check is *not an instrument* if, at the time it is issued or first comes into possession of a holder, *it contains a conspicuous statement*, however expressed, *to the effect that the promise or order is not negotiable* or is not an instrument governed by this article." (Emphasis added.) MCL 440.3104(2) clarifies, " 'Instrument' means a negotiable instrument."

The Note contained express language stating that it was nonnegotiable. Therefore, the Note failed the requirements of MCL 440.3104(4) and should not have been determined by the probate court to be a negotiable instrument.

We agree with petitioners that whether the Note was discharged is controlled by MCL 556.1, which states:

> An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration: Provided, That the agreement changing, modifying, or discharging such contract, obligation, lease, mortgage or security interest shall not be valid or binding unless it shall be in writing and signed by the party against whom it is sought to enforce the change, modification, or discharge.

MCL 566.1 requires that, in the absence of consideration, a writing must support the discharge. There is no dispute in this case that such a writing did not exist. In the absence of a writing, there must have been consideration to support the discharge. See MCL 566.1; *Minor-Dietiker v Mary Jane Stores of Mich, Inc*, 2 Mich App 585, 590; 141 NW2d 342 (1966) ("The intention of this statute is not to make unenforceable all oral modification agreements, but only those in which no valid consideration is alleged. An oral modification agreement supported by new consideration does not fall within the language of this statute.").

Adequate consideration requires a "bargained-for exchange." *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 238; 644 NW2d 734 (2002). Even assuming that Kathleen verbally attempted to discharge the Note and instructed respondent to destroy the Note, no such consideration existed to support the discharge. While respondent and his wife undoubtedly received a benefit from a discharge, Kathleen received nothing in return. Thus, there was no consideration, and the Note was not discharged.

In sum, although the probate court erred by determining that the Demand Note was a negotiable instrument, it did not err by concluding that the Note was not discharged and was subject to collection by the estate.[9]

## III. CONCLUSION

The probate court correctly concluded that both the power of attorney and the Trust gave respondent power to make limited gifts to himself and to third parties. The probate court erred, however, by determining that respondent's power to make distributions was limited by the gift-giving provision of the Trust; in addition to authorizing respondent to make gifts, the Trust gave respondent discretion to distribute the Trust's assets for the benefit of the beneficiaries. Yet, contrary to respondent's argument, this discretion was not unlimited, and there remains factual questions about whether the distributions and gifts he made under the terms of the Trust violated Michigan law. Finally, we conclude that the probate court reached the right result concerning the Note.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien

---

[9] We offer no opinion on whether the probate court correctly determined that, if the Note was a negotiable instrument, it was not discharged under MCL 440.3604(1).